[No. B062144. Second Dist., Div. Seven. Apr. 13, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT ARTHUR GUTIERREZ et al., Defendants and Appellants.

## COUNSEL

Clifford Gardner and Mark D. Greenberg, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, John R. Gorey and Karen Bissonnette, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—A jury convicted Robert Arthur Gutierrez and Antonio Rosales Ambriz[1] of first degree murder (Pen. Code,[2] 187) and two counts of first degree attempted murder (§§ 664/187). Firearm allegations (§§ 12022, subd. (a)(1), 12022.5 [appellant Ambriz only]) were found true.

Appellants, singly or jointly, contend: (1) gang expert testimony was improperly admitted; (2) the trial court erred (Evid. Code, § 352) in allowing appellant Ambriz to be impeached with his voluntary manslaughter conviction; (3) there was insufficient evidence of intent to kill regarding the attempted murder counts; (4) the trial court erred in admitting appellant Gutierrez's extrajudicial statements without an Evidence Code section 402 hearing; (5) trial counsel was ineffective; and (6) the trial court committed instructional error (flight instruction). The Attorney General contends the trial court erred in staying sentences on appellants' prior felony conviction enhancements.

We find none of the contentions well taken and affirm the judgments.

---

[1]The information identifies him as Antonio Rosales Ambriz, also known as Olegario Ambriz, the verdict forms as Antonio Rosales Ambriz, but the judgment as Olegario Palomo Ambriz.

[2]Statutory references, unless otherwise noted, are to the Penal Code.

## Factual and Procedural Background

There being an insufficiency of evidence contention, we recount the evidence in considerable detail and do so with a perspective favoring the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

On May 18, 1990, about 11:30 p.m., seven young people left a carnival together and began walking home. The group included Jaime Alvarez (murder victim), Marisela Mercado (attempted murder victim), and Veronica Sanchez (attempted murder victim).

Marisela Mercado was a member of the Gardena 13 Gang and wore distinctive gang clothing: a black sweatshirt with "Gardena Trese" imprinted on the back and her gang nickname, "Sad Eyes," on the front.

Veronica Sanchez's clothing also had a "G 13" marking and another member of the group, Javier, wore a hat with a large "G 13" on it.

Jaime Alvarez was not a gang member and was not wearing "gang clothing."

No one in the group was armed.

From the carnival, the group took some side streets and then walked north on Normandie Avenue in the City of Gardena. Some members of the group noticed a dark van, also northbound, pass them. The group continued walking north on Normandie Avenue and the same van, now southbound, again passed them. As the group approached the intersection of Normandie and Marine Avenue the van passed them again. Someone in the group gave the van "the finger." The van turned right on Marine Avenue and stopped. Four members of the group crossed the street at Marine Avenue while three stopped on the south corner waiting for the signal to turn green. Marisela Mercado, flanked by Jaime Alvarez and Veronica Sanchez, while waiting for the signal to change, saw the van passenger door open and a man exit. He wore a baseball cap and a black jacket. The man, appellant Ambriz, walked casually toward Marisela and her two companions. He had his right arm at his side.

When appellant Ambriz was about four feet away he asked Marisela Mercado and her companions where they were from. But without giving them time to answer, he raised his right hand and started shooting. He fired five times, returned to the van, and entered the passenger side. The van departed on Marine Avenue.

One shot struck Marisela Mercado in her left leg, near her ankle. Three hit Jaime Alvarez: in the chest, abdomen, and leg. He died from his wounds. Veronica Sanchez, who ran when the shooting started, was not hit.

Shortly after the shooting, City of Gardena Police Officer Saupe responded to the shooting location. He saw Jaime Alvarez on the ground, bleeding and in pain. He obtained from him a description of the shooter and the van and broadcast that description to other police units: male Mexican with dark hair and a mustache, in a dark blue and gray van with luggage racks, a spare tire rack, tinted windows, and an open roof vent.

Sergeant Lobo, en route to the shooting location, heard Officer Saupe's broadcast and then saw the van. He turned on his overhead red and blue emergency lights and his siren but the van did not stop. Sergeant Lobo continued the pursuit. The van went through a red light and drove about one mile before pulling over and stopping. The van had two occupants: appellant Ambriz in the passenger seat, and appellant Gutierrez in the driver's seat.

Sergeant Lobo asked appellants to identify themselves. Appellant Gutierrez said his name was Arturo Mendoza. Seeing that both appellants had "South Los" tattoos, Sergeant Lobo asked appellants if they were members of the South Los Gang, a rival gang of the Gardena 13 Gang. They said they were. Sergeant Lobo also asked them where they had been and where they were going. They denied having been south of 135th Street, the shooting location.

Officer Saupe brought Marisela Mercado, and others in the group, to where Sergeant Lobo had detained appellants. Ms. Mercado identified the van and the shooter, appellant Ambriz.

Sergeant Lobo then placed a tape recorder in the police vehicle where appellants were seated. He concealed it with a sheet of paper, turned it on, and left appellants alone. They conversed in Spanish, attempting to decide what to tell the officers about who they were, where they had been, and what intoxicants they had consumed. After 10 or 15 minutes Sergeant Lobo returned and transported appellants to the station. He then performed a gunshot residue test on both. The results were positive for appellant Ambriz, indicating he had recently handled or fired a firearm.

During the early morning of May 19, 1990, about six hours after the shooting, City of Gardena Police Officer Barrett retraced the van pursuit route in an effort to find the murder weapon. On 135th Street, between Normandie and Crenshaw, he found a four-inch blue-steel Smith & Wesson

revolver. Appellant Ambriz's fingerprints were on the revolver. It had five expended and one live cartridge cases. Ballistic tests showed bullets recovered from the victim's body could have been fired from the revolver.

The shooting location was territory controlled by the Gardena 13 Gang. Los Angeles County Sheriff's Deputy Holbrook, a gang expert, testified that the South Los Gang was a large, violent gang hostile to the Gardena 13 Gang. The rivalry had existed for at least 19 years. He described the purpose and technique of "drive by" shootings. He also indicated that "walk up" shootings were increasingly common.

Appellants were jointly charged with one count of murder and three counts of attempted murder.[3] Firearm enhancements were alleged (§§ 12022, subd. (a)(1) [both appellants], 12022.5 [appellant Ambriz only]). Prior felony conviction enhancements[4] were also alleged as to each appellant. Appellants pleaded not guilty and denied all allegations. Trial was by jury (except as to the felony conviction allegations). The jury found appellants guilty of first degree murder and two counts of willful, deliberate and premeditated attempted murder. The firearm allegations were found true. Appellants were sentenced to state prison: appellant Gutierrez for 26 years to life; appellant Ambriz for 30 years to life. (See fn. 4, *ante.*)

## DISCUSSION

1. *Appellants contend the trial court erred in admitting certain gang expert testimony.*

The prosecutor called Los Angeles County Sheriff's Deputy Mark Holbrook as an expert on gangs. (Evid. Code, § 720.[5]) In describing his qualifications he testified he had been a deputy sheriff for nine years, worked as a gang unit detective for two years, took a sheriff's department gang school course, handled approximately one thousand gang investigations, talked to individual gang members, did gang intelligence work, was familiar with both

---

[3]Count III, which alleged Ramon Aquino as the victim, was dismissed at the conclusion of the People's case-in-chief. (§ 1118.1.) Ramon Aquino had testified at the preliminary hearing but the prosecutor failed to establish due diligence in seeking his trial attendance, and the trial court excluded Mr. Aquino's preliminary hearing testimony.

[4]We defer our consideration of these allegations until our discussion of the Attorney General's contention.

[5]The section provides: "(a) A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert.

"(b) A witness' special knowledge, skill, experience, training, or education may be shown by any otherwise admissible evidence, including his own testimony."

the South Los Gang and the Gardena 13 Gang, and had testified as a gang expert in both municipal and superior courts.

Appellants did not challenge Deputy Holbrook's qualifications as a gang expert in the trial court and do not challenge them on appeal.

Nor do appellants claim that the trial court erred in admitting *all* of Deputy Holbrook's substantive testimony. Appellant Gutierrez expressly concedes Deputy "Sheriff Holbrook provided a good deal of expert testimony which was properly admissible." Appellant Ambriz impliedly concedes as much.

The trial court error, appellants contend, was in admitting only the following testimony:

"Q   BY [PROSECUTOR]: In the hypothetical you have two members of a gang in a van. They are driving around the gang—they are driving around a rival gang's territory, and they are seen approximately three times passing by the rival gang members as they are driving down the street—as they are walking down the street. [¶] First of all, based on your experience, what— the act of driving around like that, what are they preparing to do at that point?

"[Gutierrez trial counsel]: Same objection, Your Honor. That's way too vague.

"THE COURT: Overruled.

"THE WITNESS: I would believe that they are looking for a rival gang member or victim.

"Q   BY [PROSECUTOR]: And if, in that hypothetical, to take it further, they saw individuals with clothing on indicating a rival gang, and the passenger of that vehicle got out of the vehicle and walked up to the group and started shooting, based on your experience, would you say that was gang motivated?

"A   Yes, if they are both rival gangs.

"Q   Now, as a gang member, do certain individuals play different roles in a particular crime?

"A   What type of—are you referring to a shooting or—

"Q   Yes, specifically a shooting. [¶] And what I want to know is, let's say you have rival gang members going into another territory and you have

a driver and a passenger, is the driver usually participating as a gang member.

"A Yes. As far as representing his gang?

"Q Yes.

"A Yes."

■ The trial court erred, appellants assert, because "[t]hese hypothetical questions were beyond the proper scope of expert testimony and it was error to allow them."

■ As our Supreme Court has stated: "We reject the point at the threshold. . . . [T]he rule is that a defendant may not complain on appeal that evidence was inadmissible on a certain ground if he did not make a timely and specific objection on that ground in the trial court." (*People* v. *Gordon* (1990) 50 Cal.3d 1223, 1255 [270 Cal.Rptr. 451, 792 P.2d 251]; accord, *People* v. *Clark* (1992) 3 Cal.4th 41, 125-126 [10 Cal.Rptr.2d 554, 833 P.2d 561] ["In the absence of a timely and specific objection on the ground sought to be urged on appeal, the trial court's rulings on admissibility of evidence will not be reviewed."]; *People* v. *Price* (1991) 1 Cal.4th 324, 430 [3 Cal.Rptr.2d 106, 821 P.2d 610] ["Defendant may not challenge on appeal the admission of evidence on grounds not urged in the trial court."]; *People* v. *Mickey* (1991) 54 Cal.3d 612, 664 [286 Cal.Rptr. 801, 818 P.2d 84]; *People* v. *Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048].)

The reasons for this settled rule (Evid. Code, § 353) are sound: "The objection 'must be made in such a way as to alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the People an opportunity to establish its admissibility.' " (*People* v. *Clark, supra*, 3 Cal.4th 41, 126.)

■ In the trial court, appellants did not object to this testimony on the ground it was "beyond the proper scope of expert testimony." To earlier questions defense counsel had objected on "vagueness" grounds, and several such objections were sustained by the trial court.

To the subject questions, refined as a result of defense counsels' earlier objections, the only objection was, "too vague." Such an objection failed "to alert the trial court" (3 Cal.4th at p. 126.) to a "proper scope of expert testimony" issue.

■ We reject appellants' contention that the failure to make specific and timely objections constituted ineffective assistance of counsel. "A defendant

seeking relief on the basis of ineffective assistance of counsel must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People* v. *Price, supra,* 1 Cal.4th 324, 440.) Appellants have failed to satisfy either part of the test. The expert witness was asked only about hypothetical facts, facts within the scope of his expertise. His answers were responsive to and limited by those questions. For example, he testified not that appellant Gutierrez was a participant but that "the driver [in the hypothesized circumstances] *usually* is a participant." The contention is not well taken.

2. *Appellant Ambriz contends the trial court erred (Evid. Code, § 352) in allowing him to be impeached with his voluntary manslaughter conviction.*

■ "For the purpose of attacking the credibility of a witness, it may be shown . . . that he has been convicted of a felony . . . ." (Evid. Code, § 788.) But the felony must involve moral turpitude, i.e., a "readiness to do evil." (*People* v. *Castro* (1985) 38 Cal.3d 301, 314 [211 Cal.Rptr. 719, 696 P.2d 111].) Additionally, the trial court must weigh the probative value of permitting use of the felony conviction against its possible prejudice. (*People* v. *Green* (1980) 27 Cal.3d 1, 25 [164 Cal.Rptr. 1, 609 P.2d 468].) The record must reflect the trial court's weighing process. (*Ibid.;* Evid. Code, § 352.)

■ Appellant Ambriz contends the record fails to show the trial court exercised its Evidence Code section 352 discretion. We agree but find the error harmless. "To determine prejudice we must inquire whether the trial court would have reached a different result if it had weighed the relevant considerations *and stated that fact on the record.*" (*People* v. *Farmer* (1989) 47 Cal.3d 888, 907 [254 Cal.Rptr. 508, 765 P.2d 940], italics added.)

"Voluntary manslaughter involves moral turpitude within the meaning of *Castro.*" (*People* v. *Foster* (1988) 201 Cal.App.3d 20, 25 [246 Cal.Rptr. 855].) The conviction was not remote, having been suffered less than six years before the charged offenses. Trial counsel made clear to the trial court that he had Evidence Code section 352 discretion to exclude the conviction and urged him to do so. The similarity of the conviction to the charged offenses was also urged as a ground for exclusion. The matter was fully argued and there was no dispute concerning the trial court's discretion to exclude the impeachment evidence. Although the trial court should have had

the record reflect the exercise of his discretion,[6] we are satisfied the error was harmless.

In another sense, the error was also harmless. Even if the trial court had excluded the conviction for impeachment purposes, there was no prejudice. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

Appellant Ambriz's sole defense was self-defense. He testified he asked Gutierrez to stop the van because he thought a girl he knew had waved at him. He approached her and her nearby companions (Marisela Mercado, Jaime Alvarez, and Veronica Sanchez) when suddenly a male (Jaime Alvarez) fired a shotgun at him. He ducked, reached for the gun in his rear waistband, and fired at the male. This testimony defied belief. No felony conviction was necessary to impeach it. No shotgun was found, no pellets were discovered, no shotgun blast was heard (except by appellants), and no injury to appellant Ambriz was sustained.

3. *Appellant Ambriz contends there was insufficient evidence of intent to kill regarding the attempted murder counts.*

■ "Issues regarding the sufficiency of evidence are determined according to well-established legal principles. 'When the sufficiency of the evidence is challenged on appeal, the court must review the whole record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.' [Citation.] The reviewing court presumes in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. [Citations.] Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction. [Citations.] 'Whether the evidence presented at trial is direct or circumstantial, . . . the relevant inquiry on appeal remains whether *any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.' " (*People* v. *Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698]. Original italics.)

■ Without needlessly repeating the evidence, it suffices to state the jury could have reasonably found: (1) in driving by the victims three times appellant was stalking them; (2) appellant knew he was in Gardena 13 territory; (3) appellant believed the three people standing on the corner

---

[6]No "magic words" are required (*People* v. *Boyd* (1985) 167 Cal.App.3d 36, 45 [212 Cal.Rptr. 873]), and the "signals from the high court are somewhat confusing." (*People* v. *Clarida* (1987) 197 Cal.App.3d 547, 553 [249 Cal.Rptr. 363].)

waiting for the signal to change were rival gang members; (4) appellant, by firing five shots at close range, hitting two victims and missing one, intended to kill all three; and (5) appellant demonstrated consciousness of guilt by his flight, discarding of the murder weapon, and efforts to fabricate a defense.

The contention is without merit.

4. *Appellant Gutierrez contends the trial court erred in admitting his extrajudicial statements without first having an Evidence Code section 402 hearing.*

Evidence Code section 402 provides in relevant part: "(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article.

"(b) The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; *but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests.*" (Italics added.)

Appellant Gutierrez requested an Evidence Code section 402 hearing to determine the admissibility of his statements to Sergeant Lobo. The trial court did not provide one. Appellant Gutierrez asserts, and the Attorney General concedes, the trial court erred. We agree.

We next consider the effect of the error. Three extrajudicial statements are in question: (1) that his name was Arturo or Arthur Mendoza; (2) that he was a member of the South Los Gang; and (3) that he had not been near the shooting location.

Since appellant failed to object when Sergeant Lobo testified to the first two statements he may not now claim error. (Evid. Code, § 353; *People v. Clark, supra,* 3 Cal.4th 41, 125.)[7]

Appellant did object ("No showing that there has been a [proper] *Miranda* warning") when Sergeant Lobo testified to his third statement. *Assuming* its receipt was error, we find it harmless. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) The only purpose of this evidence was to show consciousness of guilt. That purpose was far more effectively served by evidence of flight and attempted fabrication of a defense.

---

[7]At most, the trial court's initial denial of an Evidence Code section 402 hearing amounted to an *in limine* ruling which did not, thereafter, excuse counsel from making timely and specific objections. (*People* v. *Jennings* (1988) 46 Cal.3d 963, 975-976, fn. 3 [251 Cal.Rptr. 278, 760 P.2d 475].) Defense counsel did not regard the initial ruling as final because they did object to other parts of Sergeant Lobo's testimony, on *Miranda* and other grounds.

5. *Appellant Gutierrez contends his trial counsel was ineffective.*

Appellant Gutierrez asserts his trial counsel was ineffective for not requesting an instruction on accessory after the fact (§ 32[8]), a lesser related offense.

"The burden of proving ineffective assistance of counsel is on the defendant. To establish constitutionally inadequate representation, the defendant must show that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's deficient representation subjected the defense to prejudice, i.e., there is a reasonable probability that but for counsel's failings the result would have been more favorable. When a defendant makes an ineffectiveness claim on appeal, the appellate court must look to see if the record contains any explanation for the challenged aspects of representation. If the record sheds no light on why counsel acted or failed to act in the manner challenged, 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation' the case is affirmed. In such cases, the ineffective-assistance claim is more appropriately made in a petition for habeas corpus." (*People* v. *Babbitt* (1988) 45 Cal.3d 660, 707 [248 Cal.Rptr. 69, 755 P.2d 253], internal citations omitted.)

Trial counsel was not asked for an explanation but the trial record readily suggests one: the lesser related offense was inconsistent with appellant's testimony and with his attorney's theory of defense. Appellant testified he was unaware Ambriz had a gun, that he had heard a *shotgun* blast, and did not know Ambriz had shot anyone. In sum, he did not know Ambriz had committed a felony, an essential element of accessory after the fact.

Appellant's contention is without merit.

6. *Appellant Gutierrez contends his trial court committed instructional error (flight instruction).*

The trial court instructed the jury: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstances

[8]The section reads: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

is entitled is a matter for the jury to determine." (CALJIC No. 2.52; see § 1127c.)

■ Appellant argues the trial court had a sua sponte duty to modify the last sentence of the instruction to read: "Whether or not evidence of flight shows a consciousness of guilt, and the significance to be attached to such circumstance, are matters for your determination." (See *People* v. *Simon* (1989) 208 Cal.App.3d 841, 850, fn. 10 [256 Cal.Rptr. 373] where the trial court gave the modified instruction.) Appellant is mistaken.

CALJIC No. 2.52 incorporates the instructional language of section 1127c which states "No further instruction on the subject of flight need be given." (See also *People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1243-1245 [278 Cal.Rptr. 640, 805 P.2d 899].) If appellant sought a modification of a correct instruction it was his duty to request the modification. (*People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].)

7.   *The Attorney General contends the trial court erred in staying sentences on appellant's prior felony conviction enhancements.*

■ The Attorney General argues[9] the trial court exceeded its authority in staying the sentence (a functional equivalent of "striking") on appellant Ambriz's section 667 prior felony conviction and similarly erred in failing to state reasons for staying appellant Gutierrez's section 667.5, subdivision (b) prior felony conviction.

Appellants respond that the People failed to object in the trial court, the People could have (§ 1238) but did not file an appeal, and the issue may not now be raised.

We need not address these issues because there is a more fundamental defect.

Section 1158[10] requires that "[w]henever the fact of a previous conviction . . . is charged in an accusatory pleading . . . the judge . . . must . . . *find* whether or not he has suffered such previous conviction. The . . . finding . . . *may* be '[I] find the charge of previous conviction true' . . ." (Italics

---

[9]The People did not file an appeal. The issue is only raised by way of respondent's brief.

[10]The section provides:

"Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is charged, the jury, or the judge if a jury trial is waived, must unless the answer of the defendant admits such previous conviction, find whether or not he has suffered such previous conviction. The verdict or finding upon the charge of previous conviction may be 'We (or I) find the charge of previous conviction true' or 'We (or I) find the charge of previous conviction not true,' according as the jury or the judge find that the defendant has or has not suffered such conviction. If more than one previous conviction is charged a separate finding must be made as to each."

added.) Thus, although section 1158 permits the court to express its finding with the words "I find," it does not *require* that the court use those words.

When no words are used and the trier of fact fails to make a finding the effect is the same as a finding of "not true." (*People* v. *Eppinger* (1895) 109 Cal. 294 [41 P. 1037].) Here the trial court made no finding.

Appellants waived jury regarding their priors, bifurcated them, and stipulated the trial court could determine their truth at the probation hearing by considering the probation report and any other submitted evidence.

At the probation and sentence hearing there was much court-counsel discussion about sentence but none about the deferred bifurcated-priors-trial. The trial court concluded its sentencing of both appellants, informed them of their appeal rights, determined their custody credits, granted their requests to be sent to state prison "forthwith" when, for the first time, a reference was made to the priors. This is the *entire* reference:

"THE COURT: On Ambriz and Gutierrez, the priors were not mentioned—

"THE CLERK: You are going to stay the priors on both of them.

"THE COURT:—so we will just stay the priors as to each defendant and should show that in the sentencing."

The record fails to show a *finding* as contemplated by section 1158. At most it reflects a belated judicial awareness that none had been made. Nor are we willing, on this record, to equate the trial court's acquiescence in his clerk's suggestion ("you are going to stay the priors . . .") as an implied judicial finding that the priors had been proved.

The Attorney General's contention is not well taken.

DISPOSITION

The judgments are affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellants' petitions for review by the Supreme Court were denied July 14, 1993.