[No. F039060. Fifth Dist. Feb. 6, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD BELMARES, Defendant and Appellant.

**COUNSEL**

Tara K. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Stan Cross and Catherine Chatman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GOMES, J.—**

### FACTUAL AND PROCEDURAL HISTORY

After starting to argue and fight with two young men, Edward Belmares (convicted herein as Edward Balmares) hit one on the head with a rock. Two deputy sheriffs who struggled to restrain him pepper-sprayed him, took him to the ground, and secured his legs to his handcuffs before he finally stopped kicking and yelling.[1] A jury found him guilty of assault with a deadly weapon, deterring an executive officer from performing a lawful duty (deterring), and resisting a peace officer in the discharge of an official duty (resisting). (Pen. Code, §§ 245, subd. (a)(1), 69, 148, subd. (a)(1).[2]) At a bifurcated trial, the jury found two allegations of prior prison terms true. (§§ 667.5, subd. (b), 969b.[3])

### ISSUES ON APPEAL

On appeal, Belmares raises two arguments. First, on the premise that resisting is a lesser included offense of deterring, he argues the judgment violates the rule against grounding multiple convictions in necessarily included offenses. (§ 954.) Second, on the premise that he had a constitutional right to a jury trial on the identity of the person in the section 969b packet, he argues the court's instructing the jury without finding he was that person violated due process and section 1025. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, §§ 15, 16.) We will affirm the judgment.

### DISCUSSION

1. *Multiple Convictions for Deterring an Officer and Resisting an Officer*

On the premise that resisting is a lesser included offense of deterring, Belmares argues the judgment violates the rule against grounding multiple convictions in necessarily included offenses. The Attorney General argues the contrary.

---

[1]Other relevant facts appear in the discussion of issues on appeal.
[2]Statutory references not otherwise noted are to the Penal Code.
[3]Section 969b permits proof of priors with a packet of certified prison records.

██ The general rule permitting multiple convictions arises from section 954.[4] Despite the statute's "seemingly absolute language" permitting conviction " 'of any number of the offenses charged,' " an exception to the rule exists. (*People v. Ortega* (1998) 19 Cal.4th 686, 692 [80 Cal.Rptr.2d 489, 968 P.2d 48].) The California Supreme Court "has long held that multiple convictions may *not* be based on necessarily included offenses. [Citations.]" (*People v. Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595].) "The definition of a lesser necessarily included offense is technical and relatively clear. Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, *or* the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, *such that the greater cannot be committed without also committing the lesser*." (*People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073], italics added, citing *People v. Lohbauer* (1981) 29 Cal.3d 364, 368-369 [173 Cal.Rptr. 453, 627 P.2d 183]; *People v. Marshall* (1957) 48 Cal.2d 394, 405-407 [309 P.2d 456].)

██ We will analyze first the statutory elements of the two offenses and then the pleadings in the case at bar.

Analysis of the statutory elements of the two offenses shows resisting requires commission of the crime *at the time of* a peace officer's discharge or attempted discharge of a duty of his or her office or employment. (§ 148, subd. (a)(1).[5]) A CALJIC instruction so defines that temporal element:

"In order to prove this crime, each of the following elements must be proved:

"1. A person willfully resisted, delayed, or obstructed a [peace officer] [public officer] [(other)];

"2. *At the time* the [peace officer] [public officer] [(other)] was engaged in the performance of [his] [her] duties; and

---

[4]Section 954: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count."

[5]Section 148, subdivision (a)(1): "Every person who willfully resists, delays, or obstructs any . . . peace officer . . . *in the discharge or attempt to discharge any duty of his or her office or employment* . . . shall be punished . . . ." (Italics added.)

"3. The person who willfully resisted, delayed, or obstructed knew or reasonably should have known that:

"(a) the other person was a [peace officer] [public officer] [(other)];

"(b) and was engaged in the performance of [his] [her] duties." (CALJIC No. 16.102 (1998 rev.) (6th ed. 1996) (July 2002 pocket pt.), italics added.)

Deterring, on the other hand, has disjunctive temporal elements, one of which is congruent with, the other of which is inconsistent with, the temporal element of resisting. (§ 69.[6]) "[T]he plain language of the statute encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such a duty at some time *in the future*." (*In re Manuel G.* (1997) 16 Cal.4th 805, 817 [66 Cal.Rptr.2d 701, 941 P.2d 880]; accord, com. to CALJIC No. 7.50 (6th ed. 1996) (July 2002 pocket pt.), p. 89.) A CALJIC instruction so defines those disjunctive temporal elements:

"In order to prove this crime, each of the following elements must be proved:

"[1. A person willfully [and unlawfully] attempted to deter or prevent an executive officer from performing any duty imposed upon that officer by law; and

"2. The attempt was accomplished by means of any threat or violence.]

"[1. A person knowingly [and unlawfully] resisted an executive officer in the performance of his or her duty; and

"2. The resistance was accomplished by means of force or violence.]" (CALJIC No. 7.50 (6th ed. 1996).)

By the statutory elements test, then, we hold resisting is not a lesser included offense of deterring since one can deter an officer's duty *in the future* (§ 69) without resisting the officer's discharge or attempted discharge of a duty *at that time* (§ 148, subd. (a)(1)). (See *People v. Birks, supra,* 19 Cal.4th at p. 117.) We turn, then, to the pleadings test.

The information shows the deterring count charged the following: "On or about April 18, 2001, Edward Balmares [*sic*], did willfully and unlawfully

---

[6]Section 69: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable . . . ."

attempt by means of threats or violence to deter or prevent [each of two peace officers], who was then and there an executive officer, from performing a duty imposed upon such officer by law, or did knowingly resist by the use of force or violence said executive officer in the performance of his/her duty, in violation of Penal Code section 69, a felony."

The information shows the resisting count charged the following: "On or about April 18, 2001, Edward Balmares [*sic*], did willfully and unlawfully resist, delay, or obstruct a peace officer who was then and there attempting to or discharging the duty of his/her office or employment, in violation of Penal Code section 148, a misdemeanor."

Both the deterring count and the resisting count use the word "resist," as do the respective statutes. (§§ 69, 148, subd. (a)(1).) Besides that word, the deterring count uses the words "deter" and "prevent" and the resisting count uses the words "delay" and "obstruct," as do the respective statutes. (Compare § 69 with § 148, subd. (a)(1).) Since those four words in the pleadings track precisely the identical four words in the Legislature's enactment of the statutes from which the pleadings derive, we turn to traditional principles of statutory construction to analyze the pleadings. ▮ The first step in that analysis "is to focus on the words used by the Legislature in order to determine their traditional and plain meaning." (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404].) ▮ We put aside the sole word in common—"resist"—and seek the meanings of the other four words.

In the context of the deterring count, the meaning of "deter" includes "turn aside, discourage, or prevent from acting by fear or consideration of dangerous, difficult, or unpleasant attendant circumstances" and "inhibit." (Webster's 3d New Internat. Dict. (1986) p. 616.) In the same context, the meaning of "prevent" includes "deprive of power or hope of acting, operating, or succeeding in a purpose," "frustrate," "circumvent," "keep from happening or existing," "hinder," and "stop." (*Id.* at p. 1798.)

In the context of the resisting count, the meaning of "delay" includes "put off," "prolong the time of or before," "postpone," "defer," "stop, detain, or hinder for a time," "check the motion of, lessen the progress of, or slow the time of arrival of," "cause to be slower or to occur more slowly than normal," and "retard." (Webster's 3d New Internat. Dict., *supra*, p. 595.) In the same context, the meaning of "obstruct" is "be or come in the way of," "hinder from passing, action, or operation," "impede," "retard," "shut out," and "place obstacles in the way." (*Id.* at p. 1559.)

The only word common to the definitions of any of those four words is "stop," which appears in the definition of "prevent" in the deterring count

and in the definition of "delay" in the resisting count. (Webster's 3d New Internat. Dict., *supra*, pp. 595, 1798.) The implications are quite different, however. In the definition of the word "prevent" in the deterring count, "stop" stands alone. (*Id.* at p. 1798.) In the definition of "delay" in the resisting count, on the other hand, "stop" appears in only the limited sense of "stop, detain, or hinder *for a time*." (*Id.* at p. 595, italics added.) No synonym of either of the words "deter" and "prevent" in the deterring count is the same as any synonym of either of the words "delay" and "obstruct" in the resisting count. (*Id.* at pp. 595, 616, 1559, 1798.)

To generalize, the meanings of the words "deter" and "prevent" in the deterring count and of the words "delay" and "obstruct" in the resisting count have noteworthy differences. The former two tend to connote a decisive, definite, or indubitable quality that contrasts with the provisional, temporary, or tentative note the latter two tend to strike. That none of those four words share a common synonym bolsters that generalization. To generalize, of course, is to dare both genius and tomfoolery at once. On the one hand, "To generalize means to think." (Hegel, Philosophy of Right (1821) Introduction, addition 4, reprinted in Columbia Dict. of Quotations (1993) p. 362.) On the other hand, "To generalize is to be an idiot." (Blake, *Discourse II* (1808) annots. to Discourses of Sir Joshua Reynolds, reprinted in Columbia Dict. of Quotations, *supra*, p. 362.) We neither disclaim Blake's criticism nor claim Hegel's praise but seek only to discern legislative intent.

"When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning. [Citation.]" (*People v. Trevino* (2001) 26 Cal.4th 237, 242 [109 Cal.Rptr.2d 567, 27 P.3d 283].) In harmony with that principle of statutory construction, we infer from the Legislature's use of markedly different words in the deterring and resisting statutes a legislative intent not to incorporate into either statute the meanings of the words of the other. (*Ibid.*) By the pleading test, then, as by the statutory elements test before, we hold resisting is not a lesser included offense of deterring. (See *People v. Birks, supra,* 19 Cal.4th at p. 117.) As Belmares's premise that resisting is a lesser included offense of deterring fails, so we reject his argument that the judgment violates the rule against grounding multiple convictions in necessarily included offenses.

2. *Post-Apprendi Bifurcated Trial of Identity in Prison Term Priors*

With no objection by Belmares, the court instructed the jury he was "the person whose name appears on the documents admitted to establish the convictions." (CALJIC No. 17.18.1 (2001 rev.) (6th ed. 1996).) The jury

found both prison term priors true. On the premise that he had a constitutional right to a jury trial on the identity of the person in the section 969b packet, he argues the court's instructing the jury without finding he was that person violated due process and section 1025. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, §§ 15, 16.) The Attorney General argues he waived appellate review by failing to object, he had no constitutional right to a jury trial on identity, the instruction necessarily states a true finding on that issue, and error, if any, was harmless.

■ Preliminarily, we address the Attorney General's waiver argument. "Not all claims of error are prohibited in the absence of a timely objection in the trial court. A defendant is not precluded from raising for the first time on appeal a claim asserting the deprivation of certain fundamental, constitutional rights." (*People v. Vera* (1997) 15 Cal.4th 269, 276 [62 Cal.Rptr.2d 754, 934 P.2d 1279].) Among those rights is the constitutional right to a jury trial. (*Id.* at pp. 276-277, citing *People v. Holmes* (1960) 54 Cal.2d 442, 443-444 [5 Cal.Rptr. 871, 353 P.2d 583].) ■ Since Belmares's jury trial argument has, in part, a legitimate constitutional basis, we reject as to that argument the Attorney General's waiver argument.

"Other than the fact of a prior conviction," the United States Supreme Court held, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [120 S.Ct. 2348, 2362-2363, 147 L.Ed.2d 435].) Analyzing post-*Apprendi* case law from various jurisdictions, the Second Appellate District, Division Five observed: "Courts have not described *Apprendi* as requiring jury trials on matters other than the precise 'fact' of a prior conviction. Rather, courts have held that no jury trial right exists on matters involving the more broadly framed issue of 'recidivism.' [Citations.]" (*People v. Thomas* (2001) 91 Cal.App.4th 212, 221 [110 Cal.Rptr.2d 571].) In a summary of the state of the law in California after *Apprendi*, the California Supreme Court held: "The right, if any, to a jury trial of prior conviction allegations derives from sections 1025[7] and 1158,[8] not from the state or federal Constitution. [Citations.]" (*People v. Epps* (2001) 25 Cal.4th 19, 23

---

[7]Section 1025, subdivisions (b) and (c): "(b) Except as provided in subdivision (c), the question of whether or not the defendant has suffered the prior conviction shall be tried by the jury that tries the issue upon the plea of not guilty, or in the case of a plea of guilty or nolo contendere, by a jury impaneled for that purpose, or by the court if a jury is waived. [¶] (c) Notwithstanding the provisions of subdivision (b), *the question of whether the defendant is the person who has suffered the prior conviction shall be tried by the court without a jury.*" (Italics added.)

[8]Section 1158: "Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is

[104 Cal.Rptr.2d 572, 18 P.3d 2].) Accordingly, we hold Belmares had no constitutional right to a jury trial on his identity as the person in the section 969b packet.

Shorn of the faulty premise of a constitutional jury trial violation, Belmares's argument is entirely statutory in origin, as he cannot bootstrap a claim of a statutory violation into a claim of a due process violation. So we return to the Attorney General's waiver argument. An objection is necessary for appellate review of compliance with section 1025. (*People v. Vera, supra,* 15 Cal.4th at pp. 272, 274, 276-277; *People v. Saunders* (1993) 5 Cal.4th 580, 589-592 [20 Cal.Rptr.2d 638, 853 P.2d 1093].) By failing to object, Belmares waived appellate review of that issue. Nonetheless, "to forestall a subsequent claim of ineffectiveness of counsel," we will address his claim on the merits. (*People v. Martin* (1995) 32 Cal.App.4th 656, 661 [38 Cal.Rptr.2d 776], disapproved on another ground in *People v. Deloza* (1998) 18 Cal.4th 585, 600, fn. 10 [76 Cal.Rptr.2d 255, 957 P.2d 945].)

"[T]he question of whether the defendant is the person who has suffered the prior conviction shall be tried by the court without a jury." (§ 1025, subd. (c); Stats. 1997, ch. 95, § 1.) Legislative history confirms that section 1025 "creates a specific exception for the question of identity" to the jury trial right the statute otherwise confers for a prior conviction. (*People v. Epps, supra,* 25 Cal.4th at p. 25.) Case law sets out the procedure for the court to find and instruct on identity: "If . . . the court finds the defendant is th[e] person [in the section 969b packet], . . . [t]he court would . . . instruct the jury to the effect that the defendant is the person whose name appears on the documents admitted to establish the conviction." (*People v. Kelii* (1999) 21 Cal.4th 452, 458 [87 Cal.Rptr.2d 674, 981 P.2d 518]; see *People v. Epps, supra,* at p. 26.) The record in the case at bar shows no "I find" language by the court, but section 1158 states only that the finding "may be" in those words. The statute "does not *require* that the court use those words." (*People v. Gutierrez* (1993) 14 Cal.App.4th 1425, 1440 [18 Cal.Rptr.2d 371].)

In *Gutierrez,* on which Belmares relies, the record showed no true finding on the accused's prison term prior but only compliance at sentencing with a suggestion by the court clerk that a stay issue. (*People v. Gutierrez, supra,* 14 Cal.App.4th at p. 1440.) The appellate court declined "to equate the trial

---

charged, the jury, or the judge if a jury trial is waived, must unless the answer of the defendant admits such previous conviction, find whether or not he has suffered such previous conviction. The verdict or finding upon the charge of previous conviction *may be*: 'We (or I) find the charge of previous conviction true' or 'We (or I) find the charge of previous conviction not true,' according as the jury or the judge find that the defendant has or has not suffered such conviction. If more than one previous conviction is charged a separate finding must be made as to each." (Italics added.)

court's acquiescence in his clerk's suggestion ('you are going to stay the priors . . .') as an implied judicial finding that the priors had been proved." (*Ibid.*)

In the case at bar, on the other hand, the record shows instruction to the jury that Belmares was the person in the section 969b packet. Unlike the trial court's mere acquiescence in *Gutierrez*, that instruction constituted an affirmative act from which one arguably could infer a true finding on the issue of identity. (Cf. *People v. Gutierrez, supra,* 14 Cal.App.4th at p. 1440.) *Gutierrez* is inapposite.

Since evidence of identity was overwhelming, we need not decide whether a true finding was inferable from the instruction or, as the Attorney General argues, whether the instruction constituted a true finding. At the guilt phase, Belmares testified he served one prison term for elder abuse and another prison term for "ex-con with a gun." The section 969b packet included abstracts of judgment for elder abuse and possession of a firearm by a felon. In argument at the priors phase, both counsel referred to the photograph in the section 969b packet. The jury had ample opportunity to compare that photograph with the person who testified in his own defense at the guilt phase. A result more favorable to Belmares was not reasonably probable even if the court had used the "I find" language section 1158 recommends. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

### DISPOSITION

The judgment is affirmed.

Dibiaso, Acting P. J., and Wiseman, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 30, 2003. Kennard, J., Werdegar, J., and Moreno, J., were of the opinion that the petition should be granted.