Filed 3/26/14  P. v. Chavez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AGUSTINE CHAVEZ et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B244003<br>(Super. Ct. Nos. PA069318-01,<br>PA069318-02)<br>(Los Angeles County) |

Agustine Chavez appeals a judgment following conviction of two counts of attempted willful, premeditated, and deliberate murder, with findings that he personally and intentionally discharged a firearm causing great bodily injury to each victim.  (Pen. Code, §§ 664, 187, subd. (a), 189, 12022.53, subds. (b)-(d).)[1]  We reverse and remand for a determination whether the sentences on counts 1 and 2 are to be served concurrently or consecutively, but otherwise affirm.

Roberto Nava Garcia also appeals a judgment following conviction of two counts of attempted willful, premeditated, and deliberate murder, with a finding that he served a prior prison term. (§§ 664, 187, subd. (a), 189, 667.5, subd. (b).)  We reverse and remand for trial of the prior prison term allegation, and a determination whether the sentences on counts 1 and 2 are to be served concurrently or consecutively, but otherwise affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

## FACTUAL AND PROCEDURAL HISTORY

Valentino Barragan resided with his wife, son, and other family members in a second-floor apartment in an apartment building on Sutter Avenue in Pacoima. His sister, Tiffany Barragan, also resided in the apartment with her infant daughter, A.[2] Garcia was Tiffany's erstwhile boyfriend and the father of A.

Near midnight on January 14, 2011, Garcia telephoned Tiffany and asked to speak to A. Tiffany placed the telephone near A.'s ear, but the infant was asleep. Garcia was upset that he could not speak to A. Tiffany ended the telephone conversation after assuring Garcia that he could visit A. the following day.

Shortly thereafter, Garcia drove to the Barragan apartment and demanded that Tiffany bring A. outside. Tiffany refused, reminding Garcia that he could visit A. the next day. Garcia stated, "I'll be back," and drove away. Tiffany returned to the apartment and informed Valentino that Garcia was intoxicated and had demanded to visit with A.

Five to ten minutes later, Valentino and Tiffany heard "screeching tires" and "doors slamming" and saw that Garcia had returned with Chavez. The two men left Garcia's automobile and ran up the stairway. Tiffany and Valentino stood on the second floor landing and saw Chavez climb two stairs with each footstep as he pulled a firearm from his waistband. When he reached the second floor landing, Chavez shot Tiffany in the neck.

Valentino "lunged" at Chavez to gain the firearm which Chavez was then pointing at Valentino's head. Valentino heard a second gunshot as he and Chavez wrestled and tumbled down the stairway. When the two men landed on a grassy area, Valentino heard two more gunshots.

As Chavez and Valentino continued to struggle for the firearm, Garcia kicked Valentino in the head and the ribs. Garcia stated to Chavez, "Let's finish this." Valentino bit Chavez in his hand and Chavez released the firearm. Afterward, Valentino "pistol whipped" Chavez and then struck him several times with a large rock.

---

[2] We shall refer to Valentino and Tiffany by their first names not from disrespect, but to ease the reader's task.

Garcia then began driving away, but Tiffany jumped inside his automobile and seized the ignition keys. Garcia left the vehicle and began fighting with Valentino. Meanwhile, Chavez attempted to enter the vehicle but collapsed outside. Garcia ran away but was soon detained by police officers.

Valentino suffered a single gunshot wound to the face, which traveled to his neck; Tiffany suffered a gunshot wound to the throat. Physicians were unable to remove the bullet from Valentino's neck, but Tiffany received surgery for her wound and recovered.

At trial, Chavez testified that he had consumed alcohol and smoked marijuana that evening. He stated that he accompanied Garcia to the Barragan apartment believing that they were attending a party. Chavez stated that he followed Garcia up the apartment building stairway and that he lost consciousness several times after being struck in the head and wrestling down the stairs. He explained that he discharged his firearm to empty or "off load[]" it. Chavez testified that he did not intend to shoot Tiffany or Valentino.

The jury convicted Chavez and Garcia of two counts of attempted willful, premeditated, and deliberate murder. (§§ 664, 187, subd. (a), 189.) It also found that Chavez personally and intentionally discharged a firearm causing great bodily injury to each victim. (§ 12022.53, subds. (b)-(d).)

The trial court sentenced Chavez to two prison terms of 25 years to life, and Garcia to two prison terms of life-plus-one-year, including a prior prison term enhancement. (§ 667.5, subd. (b).) The court did not state orally whether the terms were to be served concurrently or consecutively. For each defendant, the court imposed a $240 restitution fine, a $240 parole revocation restitution fine (stayed), an $80 court security assessment, and a $60 criminal conviction assessment, ordered victim restitution, and awarded 700 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Chavez appeals and contends that: 1) the trial court erred by instructing regarding a "kill-zone" theory (*People v. Bland* (2002) 28 Cal.4th 313, 329-330), and 2)

3

the prosecution committed misconduct during summation. Garcia appeals and contends that: 1) insufficient evidence supports his conviction of attempted murder of Valentino; 2) the trial court erred by instructing regarding a "kill-zone" theory; 3) the prosecutor committed misconduct during summation; 4) the trial court erred by imposing a one-year enhancement pursuant to section 667.5, subdivision (b) because the allegation was not admitted, proven, or found true; and 5) the prison terms imposed for each count are to be served concurrently because the court did not state otherwise at sentencing (§ 669).

Garcia and Chavez each join the arguments raised by the other to the extent applicable and beneficial. (Cal. Rules of Court, rule 8.200(a)(5).)

## DISCUSSION

### I.

Garcia argues that insufficient evidence supports his conviction of attempted murder of Valentino, thereby violating his constitutional right to due process of law pursuant to the federal and California Constitutions.

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.) We do not reweigh the evidence or reassess the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We accept the logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*Streeter*, at p. 241.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.)

Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. (*People v. Houston* (2012) 54 Cal.4th 1186, 1217.) The act of firing a firearm toward a victim at close range

4

in a manner that could have inflicted a mortal wound had the shot been on target is sufficient to support the reasonable inference of intent to kill. (*Id.* at p. 1218.)

A person may be liable for a criminal act as an aider and abettor. (§ 31 ["principals" in a crime include those who "aid and abet in its commission, or, . . . have advised and encouraged its commission"]; *People v. Delgado* (2013) 56 Cal.4th 480, 486.) An aider and abettor must act with knowledge of the direct perpetrator's unlawful intent and with an intent to assist in achieving those unlawful ends, and his conduct must in fact facilitate commission of the crime. (*People v. Lopez* (2013) 56 Cal.4th 1028, 1069; *Delgado*, at p. 486.) "[A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 560.)

Sufficient evidence supports Garcia's conviction as an aider and abettor of the attempted murder of Valentino. While intoxicated, Garcia demanded to speak to and visit his sleeping daughter. When Tiffany refused to awaken her daughter, Garcia left, but warned that he would "be back." Within a short time, he returned with Chavez, who was armed with a revolver. The two men ran up the stairs to the apartment, where Chavez quickly shot both Tiffany and Valentino in the neck or head from a short distance away.

As Valentino and Chavez wrestled at the bottom of the stairs, Garcia kicked Valentino in the ribs and head. Garcia urged Chavez to "finish this." Moreover, Garcia and Valentino had argued at the Sutter Avenue apartment building on an earlier occasion and Garcia knew that Tiffany lived with Valentino. Garcia also did not summon medical assistance for Tiffany or Valentino, but ran away instead.

The prosecutor argued Garcia's criminal liability as an aider and abettor, and the trial court instructed with CALCRIM No. 401 regarding aiding and abetting liability. Sufficient evidence supports Garcia's conviction as an aider and abettor of the attempted murder of Valentino. For this reason, we need not consider whether sufficient evidence supports Garcia's conviction pursuant to a kill-zone theory.

## II.

Chavez and Garcia contend that the trial court erred by instructing that the jury could base a finding of deliberation and premeditation on an intent to kill everyone within a particular kill zone. (CALCRIM No. 600 ["A person may intend to kill a specific victim or victims and at the same time intend to kill everyone in a particular zone of harm or 'kill zone'"].) They assert that the theory is inapplicable because Garcia fired only a single bullet on the second floor landing of the apartment building. Chavez and Garcia argue that the error denies them due process of law pursuant to the federal and California Constitutions.

The trial court properly instructed regarding the kill zone because sufficient evidence supports the theory. Chavez fired the first shot at Tiffany as Valentino stood next to her. (*People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690 [inference of intent to kill where defendant fires weapon at two people standing together].) Chavez fired a second shot at Valentino on "[t]he first or second top step" as they tumbled down the stairs. Once Chavez and Valentino were on the ground, Chavez fired several more shots. At the scene, police officers later recovered a revolver containing six expended shell casings and found a bullet hole in the second floor apartment canopy.

In any event, there is sufficient evidence to support defendants' convictions pursuant to a non-kill zone theory. Chavez and Garcia ran towards the second floor landing where Chavez immediately shot Tiffany in the neck and then Valentino in the face. Chavez fired the revolver several more times as he and Valentino wrestled on the ground. Garcia kicked Valentino in the head and ribs and urged Chavez to "finish this." "[A] result more favorable to the defense [is] not reasonably probable absent the instruction. . . ." (*People v. Mills* (2012) 55 Cal.4th 663, 681.)

## III.

Chavez and Garcia contend that the prosecutor committed misconduct during summation by 1) erroneously stating that the trial court had already instructed regarding a kill-zone theory, and 2) repeatedly using the phrase "kill zone" to refer to the location of the bullet wounds on each victim as well as a legal theory of attempted murder pursuant to

6

CALCRIM No. 600. For example, the prosecutor stated that Chavez pointed the firearm "directly at [Tiffany] and the kill zone of her body, the head and chest area." The defendants point out that the court overruled their objections to the asserted misconduct, refused their request for a curative instruction that the prosecutor's kill-zone theory was irrelevant, and denied their request for a mistrial and, later, a new trial. Chavez and Garcia argue that the misconduct lightened the prosecutor's burden of proof and denied them due process of law pursuant to the federal and California Constitutions.

The standards governing review of claims of prosecutorial misconduct are well settled. (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1275.) "When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the federal Constitution is violated. Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury." (*People v. Panah* (2005) 35 Cal.4th 395, 462.) To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood that the jury understood or applied the complained-of comments in an improper or erroneous manner. (*People v. Gamache* (2010) 48 Cal.4th 347, 371.)

Any error is harmless. The trial court instructed with CALCRIM No. 600 regarding attempted murder, including the kill-zone theory, following summation by all parties. The court instructed that the jury was not "to presume any emphasis on [the instruction]" due to it being reread. The court also instructed that the jury must follow the court's instructions and not the attorneys' comments on the law. (CALCRIM No. 200.) We presume that the jury understands and follows the court's instructions. (*People v. Harris* (2013) 57 Cal.4th 804, 852.)

Although the prosecutor used the phrase "kill-zone" to refer to both the location of the victims' wounds, as well as a legal theory of attempted murder, she used the phrase "kill-zone theory" to distinguish her use of the phrase. In any event, in view of the trial court's instructions, there is no reasonable likelihood that the jury applied the

7

prosecutor's comments in an improper or erroneous manner. (*People v. Gamache*, *supra*, 48 Cal.4th 347, 371.)

## IV.

Garcia argues that the trial court erred by imposing a one-year enhancement for the prior prison term allegation for each count of attempted murder. (§ 667.5, subd. (b).) He points out the court mistakenly believed that it held a hearing and received evidence or an admission regarding the prison term. Garcia relies upon section 1158 and decisions including *People v. Gutierrez* (1993) 14 Cal.App.4th 1425, 1440, and points out that the record must reflect a finding that the prior prison term allegation is true.

The parties agree that Garcia requested the trial court to bifurcate trial regarding the prior prison term allegation, but that no trial, evidence, or admission of the allegation occurred. During sentencing, the trial judge inquired of Garcia's counsel whether Garcia admitted his prior conviction. Counsel replied, "I am not sure." The judge responded: "I believe he did. I believe he admitted his prior conviction under [section] 667.5(b)." Counsel replied, "I believe you're correct." The judge then inquired whether counsel agreed with his calculation of "life plus one year because he has the [section] 667.5(b)." Counsel again replied, "Yes."

Section 1158 provides: "Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the offense with which he is charged, the jury, or the judge if a jury trial is waived, must unless the answer of the defendant admits such previous conviction, find whether or not he has suffered such previous conviction."

Here, the trial court imposed a one-year enhancement for each count of attempted murder in the mistaken belief that Garcia admitted serving a prior prison term within the meaning of section 667.5, subdivision (b). The remedy for this oversight is to remand the matter for trial of the prison term allegation. (*People v. Barragan* (2004) 32 Cal.4th 236, 241 ["[I]n the noncapital sentencing context, retrial of a prior conviction allegation does not violate the double jeopardy clause of the federal Constitution"]; *People v. Monge* (1997) 16 Cal.4th 826, 829, 845.)

*People v. Gutierrez, supra*, 14 Cal.App.4th 1425, does not assist Garcia. There, the defendants waived a jury trial regarding their prior conviction allegations, and stipulated that the trial court could determine the truth of the prior convictions at the probation hearing. At the probation hearing, no trial or discussion of the prior convictions occurred. During sentencing, the trial court acquiesced in the court clerk's suggestion that the prior convictions be stayed. The reviewing court concluded that the appellate record did not reflect a finding as contemplated by section 1158. (*Gutierrez*, at pp. 1439-1440.) The reviewing court also declined to "equate the trial court's acquiescence in [the] clerk's suggestion . . . as an implied judicial finding that the priors had been proved." (*Id.* at p. 1440.) Unlike *Gutierrez*, the court sentenced Garcia to a one-year enhancement for each count of attempted murder, in part upon the assurance of Garcia's counsel that Garcia had admitted the prior prison term allegation.

## V.

Chavez and Garcia argue that the prison terms imposed for each count of attempted murder are to be served concurrently because the trial court did not state otherwise during the sentencing hearing. (§ 669, subds. (a) & (b).) They assert that the court minute order and abstract of judgment, reciting the imposition of consecutive prison terms, do not reflect the oral pronouncement of judgment. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070 [oral pronouncement of judgment controls over a conflicting abstract of judgment].)

Section 669, subdivision (a) provides: "When a person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively. . . ." Section 669, subdivision (b) provides: "Upon the failure of the court to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently." Section 669 is a default sentencing statute applicable in

9

the event the trial court fails to exercise its sentencing discretion. (*People v. Black* (2007) 41 Cal.4th 799, 822.)

The parties agree that in pronouncing judgment, the trial court did not state whether the prison terms are to be served concurrently or consecutively nor did the court state reasons for imposition of a consecutive sentence. It would have been helpful had the prosecutor reminded the court to decide the issue. As this case must be remanded to the court for the reason discussed *ante.*, the court should be permitted to exercise its discretion and determine whether the sentences shall be served concurrently or consecutively.

We reverse and remand for trial of the prior prison term allegation regarding Garcia, and for a determination whether the sentences on counts 1 and 2 are to be served concurrently or consecutively regarding Garcia and Chavez, but otherwise affirm.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

10

Beverly R. O'Connell, Judge

Superior Court County of Los Angeles

_____

Bernstein Law Office, Bob Bernstein, Nathaniel Clark for Defendant and Appellant Agustine Chavez.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant Roberto Nava Garcia.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, William H. Shin, Deputy Attorney General, for Plaintiff and Respondent.