[No. B191217. Second Dist., Div. Eight. Nov. 28, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ERICK DARNELL LACEFIELD, Defendant and Appellant.

## COUNSEL

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FLIER, J.**—Appellant Erick Darnell Lacefield was convicted of obstructing or resisting an executive officer in the performance of duty in violation of Penal Code section 69.[1] He was sentenced to the midterm of two years in prison, after the trial court struck a prior strike conviction. He contends that the trial court committed reversible error when it refused to instruct on section 148, subdivision (a)(1) (section 148(a)(1)), as a lesser included offense of section 69. Section 148(a)(1) punishes, as a misdemeanor, the crime of resisting, delaying, or obstructing a peace officer in the performance of duty. We find merit in the contention, because section 148(a)(1) sets forth two different types of offenses (*In re Manuel G.* (1997) 16 Cal.4th 805 [66 Cal.Rptr.2d 701, 941 P.2d 880] (*Manuel G.*)), and section 148(a)(1) is a lesser

---

[1] Subsequent code references are to the Penal Code unless otherwise stated.

included offense of the type of offense in section 69 on which the prosecution relied here. We further find that the error was prejudicial. We therefore reverse.

## FACTS

### 1. *Prosecution Evidence*

Gardena Police Officers Mike Sargent, Matthew Hassoldt, William McReynolds, and Atanacio Jimenez testified for the prosecution. Around 11:00 p.m. on October 28, 2005, they responded to a disturbance call, along with about three other officers. According to the call, a person was standing outside of a bar, pointing a gun at passersby. That bar had been closed down in the past. Parolees sometimes lived in a hotel that was attached to it. There had been previous problems in that area with gangs, shootings, parole violations, domestic violence, and rock cocaine use.

When the officers arrived at the bar, they did not see anyone with a gun, but they saw an "out of control" situation that violated several provisions of the municipal code and Business and Professions Code. Loud music was coming from the bar's open door. Approximately 50 people were standing in the parking lot drinking alcohol, laughing and talking. Numerous motorcycles were revving up their engines. As the officers approached, people ran into the bar leaving behind open containers of alcohol. The officers looked into the bar and saw that it was overcrowded. They decided to close it down and have everyone come outside.

People in the bar "were very upset" about being ordered to leave. Officer Sargent was posted outside, with his back to the backdoor, to stop people from reentering. Officers Hassoldt and Jimenez stood five or six feet away from Sargent. Officer McReynolds, who was a K-9 officer, was positioned on the sidewalk with his dog.

Appellant walked toward Sargent from outside the bar. Sargent thought appellant might have a weapon due to the nature of the area, the call about a gunman, and the fact appellant held his hands inside of his jacket pockets. At some point, he observed that appellant smelled strongly of alcohol. He told appellant that no one was allowed to reenter the bar. Appellant told Sargent, "You can't stop me from going in there." He continued toward the officer, ignoring commands to stop. Sargent put his right hand against appellant's chest and tensed it. Appellant slapped Sargent's hand off his chest and continued walking toward him.

Sargent thought that appellant intended either to assault him again or to try to reenter the bar. Using the palms of his hands, he pushed appellant in the chest, which caused appellant to take "a few steps back." Appellant brought his arms to his sides, clenched his fists, and ducked his head down as if preparing to charge. Sargent put his hands and forearms on appellant's back and shoulders. Appellant lunged at Sargent and reached for his legs trying to tackle him. Sargent stepped to the side and kneed appellant in the face. Appellant fell to the ground facedown. Sargent fell down on top of him.

As appellant and Sargent struggled on the ground, Officers Hassoldt and Jimenez came to Sargent's assistance. Appellant flailed his body, struggled to raise himself from the ground, and ignored commands to stop resisting. At some point, Sargent kneed appellant in the face and Jimenez put his knee into appellant's back. Meanwhile, Officer McReynolds and his dog prevented the hostile crowd of people from approaching.

After one or two minutes, appellant was handcuffed and arrested. He did not have a weapon. His eyes were bloodshot and watery, and his speech was slurred. Before he was booked, he received treatment at a medical clinic for a swollen and abraded eye.

Sargent specifically testified that appellant's actions deterred him from performing his duty as a police officer, because when he was supposed to be guarding the door, he had to wrestle appellant to the ground.

2. *Defense Evidence*

Three defense witnesses gave different versions of the incident.

Neilson Williams testified that he stepped outside the door of the bar when instructed to do so. An officer grabbed him by the shirt at chest level and told him to stay where he was. Williams asked the officer why his shirt had been grabbed. Appellant "kind of casually" approached. The officer rushed toward appellant, grabbed him, wrestled with him, and hit him with a baton. Once appellant was on the ground, other officers hit him with batons and kicked him. Williams never saw appellant slap at, charge, or grab any officer.

Yvette Todaro, the owner of the bar, testified that she was talking to an officer outside the bar after the police closed it down. She noticed appellant standing at the doorway about six feet away. She did not see him hit or push an officer. She saw an officer stand in front of him and saw him fall to the ground with the officer, but did not see what happened between them before they fell.

Marcus Bell testified that he was standing outside the bar when the officers arrived.[2] He saw appellant arrive, after the officers had ordered everyone to leave the bar. An officer pushed Williams, who told the officer not to put his hands on him. Appellant walked up and politely asked the officer if he could enter. The officer told appellant that no one was going inside. Appellant said, "Why can't nobody go in the club? We ain't gotta leave." The officer pushed appellant twice. Appellant held his hands out as he said, "What you doing? What you doing?" The second push caused him to fall to the ground. When he was on the ground, more officers assisted the first officer in holding him there. One officer held his knee in appellant's neck, another held his legs, and another punched him in the face, five or six times.

### 3. Prosecution Rebuttal Evidence

Sargent testified that none of the officers used batons, and appellant was the only person he touched.

## DISCUSSION

### 1. The Relationship Between Sections 69 and 148(a)(1)

The issue is whether appellant was entitled to a requested instruction on section 148(a)(1), in addition to section 69. To resolve that issue, we must decide if section 148(a)(1) is a lesser included offense of the second type of offense in section 69. Our analysis of that issue causes us to part company with *People v. Belmares* (2003) 106 Cal.App.4th 19 [130 Cal.Rptr.2d 400] (*Belmares*), disapproved on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228 [45 Cal.Rptr.3d 353, 137 P.3d 184].

Section 148(a)(1) states, in pertinent part: "(a)(1) Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment." (See generally 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Governmental Authority, § 18, pp. 1103–1104.)

---

[2] Bell, a longtime friend of appellant's, had been convicted in 1999 of shooting a gun inside an inhabited dwelling.

Section 69 provides: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, *or* who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment." (Italics added.)

Section 69 "sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." (*Manuel G.*, *supra*, 16 Cal.4th at p. 814; see generally 2 Witkin & Epstein, Cal. Criminal Law, *supra*, Crimes Against Governmental Authority, § 119, pp. 1212–1213.) The two ways of violating section 69 have been called "attempting to deter" and "actually resisting an officer." (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1530 [29 Cal.Rptr.3d 586] (*Lopez*).) We refer to them as "the first type of offense" and "the second type of offense," as that is the nomenclature used throughout *Manuel G.*

In *Manuel G.*, the minor made a threat to a sheriff's deputy, indicating that he and his " 'home boys' " were going to " 'start killing' " deputies, if the deputies did not leave them alone. (*Manuel G.*, *supra*, 16 Cal.4th at pp. 819–820.) The case was prosecuted under the first type of offense in section 69, but the opinion discussed both types of offenses in section 69. It explained that the two types of offenses have different elements. The first type of offense can be established by "[a] threat, unaccompanied by any physical force." (16 Cal.4th at p. 814.) It may involve "attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such at duty at some time *in the future*." (*Id.* at p. 817.) If the threat is to deter the officer's performance of duty at a later time, "only the future performance of such duty must be lawful," that means it is unnecessary to decide whether the officer was lawfully performing duty at the time the threat was made. (*Ibid.*) For the second type of offense, the resistance must include "force or violence," and the officer had to be lawfully engaged in the performance of duty at the time of the defendant's resistance. (*Id.* at pp. 815–816.)

The accusatory pleading here alleged both types of offenses in section 69,[3] but the prosecutor expressly relied on the second type of offense, based on

---

[3] It stated that appellant violated section 69 because he "did unlawfully attempt by means of threats and violence to deter and prevent OFFICER SARGENT, who was then and there an executive officer, from performing a duty imposed upon such officer by law, *and did* knowingly resist by the use of force and violence said executive officer in the performance of his/her duty." (Italics added.)

appellant's use of force. The jury was therefore given Judicial Council of California Criminal Jury Instructions (2006) CALCRIM No. 2652, which set forth the elements of the section 69 offense as: "1. The defendant unlawfully used force or violence to resist an executive officer, [¶] 2. When the defendant acted, the officer was performing his lawful duty; [¶] AND [¶] 3. When the defendant acted, he knew the executive officer was performing his duty." The jury was further instructed that the police officers in this case were executive officers, for the purpose of the crime.

Defense counsel asked that the jury also be given CALJIC No. 16.102. It names the elements of section 148(a)(1) as: "1. A person willfully resisted, delayed, or obstructed a [peace officer] [public officer] [_____]; [¶] 2. At the time the [peace officer] [public officer] [_____] was engaged in the performance of [his] [her] duties; and [¶] 3. The person who willfully resisted, delayed, or obstructed knew or reasonably should have known that: [¶] (a) the other person was a [peace officer] [public officer] [_____(other)]; [¶] (b) and was engaged in the performance of [his] [her] duties."

Defense counsel argued that there was evidentiary support for section 148(a)(1), as a lesser included offense of section 69, based on appellant's words to Sargent, before anyone used force. The prosecutor objected to the instruction on the ground the People were relying on appellant's use of force and not his verbal statements. The trial court asked why the case was filed under section 69 and not section 148. The prosecutor said he did not know why, as he had not personally filed the case, but there was sufficient evidence of a violation of section 69. The trial court then refused the requested instruction. It thereby committed error.

■ "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117 [77 Cal.Rptr.2d 848, 960 P.2d 1073] (*Birks*).) ■ "California decisions have held for decades that even absent a request, and even over the parties' objections, the trial court must instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser." (*Id.* at p. 118.) On the other hand, a defendant is not entitled to an instruction on a lesser *related* offense, over the objection of the prosecution. (*Id.* at p. 136.)

There are striking similarities, and some important differences, between the elements of the second type of offense in section 69 and the offense in section

148(a)(1). The temporal element is identical, as both require the officer's present performance of duty. Both require resistance, although section 148(a)(1) also refers to delay or obstruction. The section 69 offense specifies unlawful resistance with "force or violence," while section 148(a)(1) can be violated without force, since it punishes a person who "willfully resist[ed], delay[ed], or obstruct[ed]." The section 69 offense requires that the defendant "knew" the officer was performing duty, while section 148(a)(1) requires that the defendant "knew or reasonably should have known" of the officer's role. Comparing the elements, it appears to be impossible to violate the second type of offense in section 69 without also violating section 148(a)(1), which means that section 148(a)(1) is a lesser included offense of the second type of offense in section 69, under the statutory elements test described in *Birks*.

We turn now to previous cases on this subject.

In *People v. Esquibel* (1992) 3 Cal.App.4th 850, 853–855 [5 Cal.Rptr.2d 47] (*Esquibel*), Division Seven of this district assumed, without deciding, that section 148(a)(1) was a lesser included offense of section 69. The defendant there was charged with three counts of section 69 and three counts of section 243.1 (battery on a custodial officer), based on a fight with three security officers at a jail. Defense counsel requested instructions on section 148 as a lesser included offense, and the trial court agreed to give them. However, the instruction that was given on section 148 referred only to the three counts that alleged section 243.1. *Esquibel* found it to be "of no significance" that section 148(a)(1) was not mentioned in the context of the section 69 counts, as the jury was given the option, as to all three officers, of deciding whether the defendant's conduct "violated all, some, or none" of the offenses. (*Esquibel*, at p. 855.)

In *People v. MacKenzie* (1995) 34 Cal.App.4th 1256, 1279–1281 [40 Cal.Rptr.2d 793] (*MacKenzie*), an opinion by the Sixth District, the defendant maintained that the jury should have been instructed on section 148(a)(1), as a lesser *related* offense of section 69. The *MacKenzie* court agreed, but found the error to be harmless, because the defendant's theory for the lesser offense was based on intoxication, and the jury had decided the factual issue of intoxication against the defendant in the context of another count.

In the opinion by the Fifth District in *Belmares, supra*, 106 Cal.App.4th 19, the court analyzed the lesser included offense issue in detail. It concluded that section 69 is not a lesser included offense of section 148(a)(1) under either the statutory elements or accusatory pleading tests. Closer inspection shows, however, that there are serious flaws in *Belmares*'s analysis of the

statutory elements test, as the court did not recognize that the two types of offenses in section 69 have different elements.[4]

The facts in *Belmares, supra*, 106 Cal.App.4th 19, once again involved a defendant who physically struggled with officers who were trying to restrain him. The specific issue was whether the defendant could be convicted under both section 69 and section 148(a)(1), without violating the rule that multiple convictions cannot be based on lesser included offenses. In analyzing the statutory elements of the two offenses, *Belmares* recognized that section 148(a)(1) involves resistance at the time of the officer's discharge of duty. (*Belmares*, at p. 23.) Turning to the temporal element for a violation of section 69, *Belmares* quoted the language from *Manuel G., supra*, 16 Cal.4th at page 817, stating that section 69 " 'encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such a duty at some time *in the future*.' " (*Belmares, supra*, 106 Cal.App.4th at p. 24, original italics.) *Belmares* failed to recognize that the quoted language from *Manuel G.* was referring to the elements of the first type of offense in section 69, but not the second. Indeed, *Manuel G.*, at page 816, itself states that the offense in "the second part of section 69 necessarily assumes that the officer is engaged in such duty when resistance is offered."

It is clear to us that the second type of offense in section 69 and the offense in section 148(a)(1) have the same temporal element, present performance of duty, which has nothing to do with future performance of duty.

*Belmares* then quoted CALJIC No. 7.50 (6th ed. 1996), which sets forth, as alternatives, the elements of the two different offenses in section 69. (*Belmares, supra*, 106 Cal.App.4th at p. 24.) *Belmares* did not recognize that the instruction includes two different sets of elements. The opinion then concluded: "By the statutory elements test, then, we hold resisting is not a lesser included offense of deterring since one can deter an officer's duty *in the future* (§ 69) without resisting the officer's discharge or attempted discharge of a duty *at that time* (§ 148, subd. (a)(1))." (*Ibid.*) As we have explained, that statement from *Belmares* is correct for the first type of offense in section 69, but not the second, since the second type of offense does not involve the officer's future duty.

A similar problem occurs in the Sixth District's opinion in *Lopez, supra*, 129 Cal.App.4th at page 1532. *Lopez* found that the trial court had not erred in failing to instruct on section 148(a)(1) as a lesser included offense of section 69. It agreed with *Belmares* that "section 148 is not a lesser included offense

---

[4] Our conclusion is based on the statutory elements test for lesser included offenses, so we need not address the analysis of the accusatory pleading test that appears in *Belmares, supra*, 106 Cal.App.4th 19.

of section 69, because section 69 can involve a present attempt to deter an officer's future duty." (*Lopez, supra,* at p. 1532, citing *Belmares, supra,* 106 Cal.App.4th at pp. 24–26.) *Lopez* then stated that section 148(a)(1) is a lesser related offense of section 69, under *MacKenzie, supra,* 34 Cal.App.4th at pages 1279–1280, that meant the defendant was not entitled to an instruction on it without the prosecutor's consent under *Birks, supra,* 19 Cal.4th at pages 112–113.[5]

Thus, like *Belmares, Lopez* failed to recognize that, for the purpose of determining whether section 148 is a lesser included offense of section 69, the concept of "an officer's future duty" applies to the first type of offense in section 69 but not the second. The court recognized, earlier in the opinion, that section 69 contains two different offenses with different elements (*Lopez, supra,* 129 Cal.App.4th at p. 1530), but it failed to separate the two offenses for the purpose of its lesser included offense analysis.

■ We decline to follow *Belmares* and *Lopez,* upon which respondent relies. We hold that section 148(a)(1) is a lesser included offense of the second type of offense in section 69, based on the statutory elements of the respective offenses. The trial court in this case therefore erred in refusing to instruct on section 148(a)(1), if there was an evidentiary basis for the instruction.

### 2. *Was There Evidence That Appellant Committed Only the Lesser Offense?*

Respondent maintains that, even if the trial court erred in failing to instruct on section 148(a)(1), there was no prejudice because there was no substantial evidence from which the jury could have concluded that appellant violated section 148(a)(1) and not section 69. (*People v. Haley* (2004) 34 Cal.4th 283, 312 [17 Cal.Rptr.3d 877, 96 P.3d 170]; see 5 Witkin & Epstein, Cal. Criminal Law, *supra,* Criminal Trial, § 630, p. 898.)

Appellant contends that the jurors might have believed he violated section 148(a)(1) by arguing with Sargent about entering the bar, but committed no crime after that, because his use of force was a response to Sargent's unlawful use of force.

Appellant relies on cases in which a violation of section 148(a)(1) was proven by verbal interference. One such case is *People v. Robles* (1996) 48 Cal.App.4th Supp. 1, 6 [56 Cal.Rptr.2d 369] (*Robles*), in which the defendant approached a suspect who was selling narcotics to an undercover officer,

---

[5] As with *Belmares,* we do not address the analysis of the accusatory pleading test that appears in *Lopez, supra,* 129 Cal.App.4th at pages 1532–1533, because our holding is based on the statutory elements test.

alerted the suspect to the officer's identity, and told him to get away. A second is *People v. Green* (1997) 51 Cal.App.4th 1433, 1436 [59 Cal.Rptr.2d 913] (*Green*), in which the police came to the defendant's house to investigate a child abuse complaint, the defendant told his child why the police were there, and he then said: " '*You know that didn't happen*, but that's what they think.' " A third is *People v. Roberts* (1982) 131 Cal.App.3d Supp. 1, 7–8 [182 Cal.Rptr. 757] (*Roberts*), in which the defendant shouted obscenities during his son's field sobriety test and tried to place himself between his son and the officer prior to a physical struggle.

Based on the preceding cases, there was an evidentiary basis for instructing on section 148(a)(1) here, because there were different versions of how the incident occurred, such that the jury might have found that appellant violated section 148(a)(1) and not section 69, if it had been given section 148(a)(1) as an option.

Officer Sargent testified that appellant ignored commands to stop and kept walking toward him while saying something like, "You can't stop me from going back in there." Sargent tried to stop appellant by placing a hand on appellant's chest. Appellant "slapped" Sargent's arm away, continued moving toward Sargent, and appeared to be preparing to assault him. Sargent used the palms of both hands to push appellant back a few steps. Appellant changed his body position, as if preparing to charge, so Sargent put his hands and forearms on appellant's back and shoulders. Appellant lunged, as if trying to tackle Sargent, so Sargent stepped to the side, kneed appellant in the face, pushed him to the ground, and fell on top of him. At some time during the incident, Sargent noticed that appellant smelled strongly of alcohol.

Officer Hassoldt, who was standing nearby, essentially corroborated Sargent's version of the incident.

Officer Jimenez, who was standing within five feet of Sargent, gave a different version, which did not include any aggressive action by appellant. Jimenez saw Sargent push appellant, but did not see what happened immediately before the push. After the push, appellant and Sargent "immediately went down straight to the ground." Under further questioning, Jimenez said his view was obstructed for five to 10 seconds after the push, and it was after that delay that he saw the two men on the ground.

Officer McReynolds, who was further away, saw appellant move back abruptly, regain balance, and charge at Sargent. Sargent then put his arms around appellant's upper body and brought appellant to the ground.

Appellant did not testify, probably because of a pretrial ruling that he could be impeached with a conviction in 1995 for driving without the owner's consent and in 1996 for robbery.

Defense witness, Yvette Todaro, did not see what happened before appellant and Sargent fell to the ground.

Defense witness Williams indicated that after appellant casually approached an officer, he was wrestled to the ground, hit with batons and kicked.

According to defense witness Bell, Sargent pushed appellant to the ground after appellant made protestations like: "Can I go to the club?" and "Why can't nobody go in the club? We ain't gotta leave."

■ The jurors were entitled to accept or reject all of the testimony, or a portion of the testimony, of any of the above witnesses. (See *People v. Wickersham* (1982) 32 Cal.3d 307, 328 [185 Cal.Rptr. 436, 650 P.2d 311], disapproved on another ground in *People v. Barton* (1995) 12 Cal.4th 186, 201 [47 Cal.Rptr.2d 569, 906 P.2d 531].) They might have believed part of what the officers said and part of what the defense witnesses said. They therefore might have found that appellant acted unlawfully, by arguing with Sargent and refusing to disburse, but he did not use force unlawfully because his use of force was a response to Sargent's unlawful use of force.

Respondent argues that a violation of section 148(a)(1) could not be proven through appellant's words, "You can't stop me from going back in there," or "Why can't nobody go in the club? We ain't gotta leave," because appellant had a First Amendment right to direct verbal criticism at the officers. (*Houston v. Hill* (1987) 482 U.S. 451, 461 [96 L.Ed.2d 398, 107 S.Ct. 2502]; *Robles, supra*, 48 Cal.App.4th at p. Supp. 6.) The argument lacks merit because the jurors might have found that appellant's words went beyond verbal criticism, into the realm of interference with duty, as did the defendants' words in *Robles, supra*, 48 Cal.App.4th at page Supp. 6, *Green, supra*, 51 Cal.App.4th at page 1436, and *Roberts, supra*, 131 Cal. App. 3d at pages Supp. 7–8.

We therefore conclude that there was substantial evidence from which the jury could have found that appellant violated section 148(a)(1), and not the second type of offense in section 69.

3. *Prejudice*

Error in failing to instruct on a lesser included offense is reviewed under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. (*People v. Breverman* (1998) 19 Cal.4th 142, 177–178 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (*Breverman*).)

This is not a case in which the evidence of guilt was uncontested or overwhelming. Each side presented different, plausible versions of the incident. Indeed, Sargent himself testified that he put his hands on appellant before appellant ever touched him. Moreover, another prosecution witness, Officer Jimenez, observed no aggressive behavior from appellant before Sargent pushed him.

It is also significant that while the jury was deliberating, it requested a readback of the testimony of Sargent and defense witness Bell, who gave totally different descriptions of the incident. That request by the jury verifies the closeness of the case.

Respondent maintains that there was no prejudice because the jury was fully instructed on the meaning of unlawful force, so it necessarily found that appellant unlawfully used force or violence.[6]

In our view, the error was prejudicial because the jury was given no alternative other than a not guilty verdict if it believed that appellant's initial resistance was unlawful, and there was no unlawful use of force. The absence of an instruction on section 148(a)(1) forced "an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other." (*Birks, supra,* 19 Cal.4th at p. 119.) "[N]either party has a greater interest than the other in gambling on an inaccurate all-or-nothing verdict when the pleadings and evidence suggest a middle ground . . . ." (*Id.* at p. 127, italics omitted.) The pleadings and evidence here suggested a middle ground, a conviction for section 148(a)(1), but the jury was not given that option.

Based on our examination of the entire record, we find it reasonably probable that appellant would have obtained a more favorable outcome if there had been an instruction on section 148(a)(1) as a lesser included offense. (*Breverman, supra,* 19 Cal.4th at p. 178.) We therefore reverse.

---

[6] The jury was instructed via CALCRIM No. 2652, that the People had to prove that appellant used unlawful force against an officer who was performing lawful duty, and the officer was not lawfully performing duty if he used unreasonable or excessive force. The jury also received detailed instruction, through CALCRIM No. 2670, on the meaning of reasonable and unreasonable use of force by an officer. That instruction included appellant's right to lawfully use force in resistance to Sargent's unlawful use of force.

## DISPOSITION

The judgment is reversed.

Cooper, P. J., and Rubin, J., concurred.

A petition for a rehearing was denied December 20, 2007, and the opinion was modified to read as printed above.