[No. B218413. Second Dist., Div. One. Nov. 12, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
RAFAEL A. RAMIREZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part I.

COUNSEL

Landra E. Rosenthal, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Yun K. Lee and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROTHSCHILD, J.**—Rafael A. Ramirez appeals from convictions on one count of murder and two firearms charges. He argues that the superior court erred by failing to instruct the jury on voluntary manslaughter on a heat of passion theory, and we agree.

We also conclude that the error was prejudicial. In particular, we reject respondent's argument that the instructional error was rendered harmless by the jury's determination that Ramirez was guilty of first degree murder rather than second degree murder. (*People v. Berry* (1976) 18 Cal.3d 509, 518 [134 Cal.Rptr. 415, 556 P.2d 777].)

We accordingly reverse Ramirez's murder conviction but affirm the firearms convictions.

## BACKGROUND

The information charged Ramirez with one count of murder under subdivision (a) of Penal Code section 187[1] (count 1); one count of possession of a concealed firearm under subdivision (a)(2) of section 12025 (count 2); one count of obliterating the identification of a firearm under section 12090 (count 3); and one count of possession of a firearm with the identification numbers removed under subdivision (a) of section 12094 (count 4). As to count 1, the information further alleged that Ramirez personally used a firearm, personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm causing great bodily injury and death within the meaning of section 12022.53, subdivisions (b), (c), and (d). The information also alleged as to count 1 that Ramirez committed the offense for the benefit of, at the direction of, and in association with a criminal street gang and with the specific intent to promote, further, and assist in criminal conduct by gang members, within the meaning of subdivision (b)(1)(A) of section 186.22. Ramirez pleaded not guilty and denied the allegations.

The charges were tried to a jury. The prosecution moved to dismiss count 3 pursuant to section 1385, and the court granted the motion. The jury found Ramirez guilty of first degree murder on count 1, guilty on counts 2 and 4, and the special allegations true.

The trial court sentenced Ramirez to 25 years to life on count 1, plus 25 years for the firearm allegation, plus the high term of three years on count 3, to run consecutively. As to count 4, the court imposed, but stayed under section 654, a sentence of 180 days in county jail.

The evidence introduced at trial, viewed in the light most favorable to the judgment, showed the following facts. In the afternoon of February 27, 2004, Ramirez was "hanging out" with fellow Loco Park gang members Gerardo Sanchez and "Little Boy" at Gerardo's home.[2] At some point Gerardo and "Little Boy" left to go to the store, leaving Ramirez at the house with Gerardo's brothers Eduardo, Miguel, Benito, Jose, and Gabriel.

---

[1] All subsequent statutory references are to the Penal Code.

[2] Because Gerardo Sanchez and his brothers have the same last name, we will refer to them by their first names. No disrespect is intended.

That same afternoon, Jack Artiga, who lived nearby, was walking home when two Black males "jumped" him, beat him, and took his cell phone. Artiga ran home and called the police, but while waiting for them to arrive he saw one of his assailants, later identified as Anthony Boothe, in the street outside his home. Artiga also saw Gerardo (apparently on his way back from the store with "Little Boy") and asked him to help get the cell phone back. Gerardo called to Ramirez, who was across the street. Gerardo confronted Boothe, who was apparently a member of the Four Trey gang, and told him to give the cell phone back to Artiga. Boothe insisted he did not have it.

Artiga described what happened next as follows: Gerardo and Boothe argued, made gang signs, and claimed their respective gangs. Gerardo walked away saying, "I got some homeys, I'll be back. I got homeys from Loco Park." Boothe walked away as well. Within five or 10 minutes, Boothe returned with another Black male on a bike. Gerardo also returned, there was a further confrontation with Boothe and the other Black male, and Artiga then heard shots.

Gerardo's description of the course of events is somewhat different: After Boothe repeatedly denied having the cell phone, another Black male rode up on a bike, and Boothe asked to borrow the bike so he could go get the cell phone. After Boothe got on the bike, however, Artiga again demanded the cell phone, and Boothe, who had had the phone in his pocket the whole time, took it out and threw it on the ground, breaking it.

Boothe then got off the bike and punched someone. According to Gerardo, Boothe punched Artiga in the face, but Artiga testified that Boothe punched Gerardo in the neck. One of the investigating officers, however, testified that one of Gerardo's brothers told him that when Ramirez returned to the Sanchez home after the shooting, Ramirez said that Boothe had punched him (i.e., Ramirez). And in a taped interview that was played for the jury, Gerardo's brother Benito said the same thing: When Ramirez returned to the Sanchez home after the shooting, Ramirez said he had been punched by Boothe. In any event, after the punch, Boothe started "get[ting] crazy," saying "this is my hood and all that." Ramirez then started shooting and continued to shoot as Boothe tried to flee.

When Ramirez arrived at Gerardo's house a few minutes later, Ramirez was shivering and said "[t]hat he dropped some guy" who had punched him. Boothe died from multiple gunshot wounds, two to his arms and three to the back of the head.

## DISCUSSION

Ramirez argues that the trial court committed prejudicial error by not instructing the jury sua sponte on voluntary manslaughter as a lesser included offense of murder, on the theory that Ramirez shot Boothe in the heat of passion after Boothe provoked him by punching him. We conclude that the trial court erred by failing to give the instruction and that it is reasonably probable that Ramirez would have obtained a more favorable result if the instruction had been given. (See *People v. Moye* (2009) 47 Cal.4th 537, 555–556 [98 Cal.Rptr.3d 113, 213 P.3d 652] (*Moye*) [omission of voluntary manslaughter instruction is reviewed for harmlessness under the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]].)

### I. Instructional Error[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. Prejudice

Ramirez argues that the erroneous omission of the heat of passion voluntary manslaughter instruction was prejudicial because the evidence against him was relatively weak. The prosecution's case was based entirely on the statements of the Sanchez brothers, who themselves had gang affiliations, made inconsistent statements at various times, and might have pinned the crime on Ramirez in order to conceal their own guilt. (See *Moye, supra,* 47 Cal.4th at pp. 555–556 [the strength of the evidence supporting the judgment is a relevant consideration in determining prejudice].) Moreover, Gerardo admitted that he told the police Ramirez was the shooter only after the police told him they had evidence that he, Gerardo, was the shooter, and one of the investigating officers testified that the Sanchez brothers' statements were the only evidence identifying Ramirez as the shooter, and that without those statements "you have no witnesses in this case and an unsolved murder."

In rebuttal, respondent points out that "[e]rror in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions." (*People v. Lewis* (2001) 25 Cal.4th 610, 646 [106 Cal.Rptr.2d 629, 22 P.3d 392].) Respondent contends that

---

[*]See, footnote, *ante,* page 1483.

because the jury found that Ramirez acted willfully, deliberately, and with premeditation, it necessarily found that he did not act under the heat of passion.[3]

■ Respondent's argument fails as a matter of law because the Supreme Court has held that the erroneous omission of an instruction on heat of passion voluntary manslaughter is not rendered harmless by a jury determination that the defendant was guilty of first degree murder rather than second degree murder. (*People v. Berry, supra,* 18 Cal.3d at p. 518.) The Supreme Court's decision is binding on us. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

The remainder of respondent's rebuttal is largely a compilation of the arguments we have already rejected in the unpublished portion of this opinion discussing the claim of error—there was no evidence of provocation, no evidence that provocation would have been reasonable under the circumstances, no evidence that Ramirez was acting under heat of passion, and strong evidence of racial prejudice and gang rivalry.[4] Again, we are not persuaded. As the investigating officer conceded, the evidence against Ramirez all comes from the Sanchez brothers, so the case against Ramirez suffers from all of the weaknesses described above.

We conclude that the evidence against Ramirez was not so overwhelming as to show there is no reasonable probability that he would have obtained a more favorable result if the jury had been instructed concerning voluntary manslaughter on a heat of passion theory. Our resolution of this issue makes it unnecessary for us to address the remaining arguments raised by the parties.

---

[3] The trial court used CALCRIM No. 521 to instruct the jury on first and second degree murder, stating that "[t]he defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation" and that "[a]ll other murders are of the second degree." The instruction defined willfulness, deliberation, and premeditation as follows: "The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before committing the act that caused death."

[4] Respondent also argues that because the jury found the gang allegation true, "the jury necessarily found the absence of the subjective element and that appellant did not act due to provocation." We disagree. An *intentional* killing in a sudden quarrel or heat of passion is still voluntary manslaughter (*People v. Lasko* (2000) 23 Cal.4th 101, 104 [96 Cal.Rptr.2d 441, 999 P.2d 666]), and respondent does not explain why a person acting under heat of passion can intend to kill but cannot intend to assist a gang.

## DISPOSITION

The murder conviction is reversed but the firearms convictions are affirmed, and the case is remanded for further proceedings consistent with this opinion. The trial court is directed to prepare an amended abstract of judgment reflecting the change and forward a certified copy thereof to the Department of Corrections and Rehabilitation.

Mallano, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied December 10, 2010, and respondent's petition for review by the Supreme Court was denied February 16, 2011, S189175. Baxter, J., and Chin, J., were of the opinion that the petition should be granted.