Filed 2/11/14  P. v. Kingsby CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B241328 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA053322) |
| v. | |
| JOANNE KINGSBY et al., | |
| Defendants and Appellants. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Reversed.

Tracy A. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant Joanne Kingsby.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant Christel Chantel Featherstone.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Lawrence M. Daniels and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

## INTRODUCTION

Defendants Joanne Kingsby and Christel Chantel Featherstone appeal from judgments of conviction entered after a jury found them guilty on two counts of attempting by means of threats or violence to prevent an executive officer from performing his duty in violation of Penal Code section 69. The trial court suspended sentence for both defendants and placed them on formal probation for three years, conditioned on serving 45 days in county jail. On appeal, Kingsby and Featherstone challenge the sufficiency of the evidence to support their convictions, argue the trial court committed instructional error, and contend the prosecutor engaged in misconduct during closing argument. Kingsby also argues the trial court erred by denying her request to join in Featherstone's *Pitchess*[1] motion. We agree with Kingsby and Featherstone that the trial court erred by failing to instruct sua sponte on the lesser included offense of Penal Code section 148, subdivision (a)(1), and that this instructional error was prejudicial. Therefore, we reverse.

## FACTS

On June 30, 2011 at approximately 12:30 p.m. Los Angeles County Sheriff's Deputies Jeffrey Williams and James Dodson responded to a domestic violence call in Lancaster. Keiona Stenhouse testified that she called the Sheriff's Department after her husband, Eric Stenhouse, had pinned her down and choked her.[2] Keiona called Kingsby, her mother, and Featherstone, her younger sister, and asked them to come to her house

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[2] Because Keiona, Eric, and Eric's brother Nathan all have the same last name, we will refer to their them by their first names for clarity. (See *People v. Ramirez* (2010) 189 Cal.App.4th 1483, 1485, fn. 2; *People v. Cabonce* (2009) 169 Cal.App.4th 1421, 1424, fn. 2.)

because Eric had "just jumped on" her and choked her and the children were scared. Kingsby, who was visiting with Featherstone, initially refused because she felt the Stenhouses were "always into this stuff," but agreed to come over with Featherstone when Keiona said she was "bleeding everywhere." Kingsby, four of her six foster children, Featherstone, and her son arrived at approximately 10:30 a.m. Eric's brother Nathan, Eric's cousins Patricia Boyce and Kianna Boyce, and eight children were at the house. Keiona was holding her neck, breathing hard, had a broken nail, and her eyes were red from crying. When the deputies arrived, Keiona told them that her husband Eric had assaulted her during an argument and driven away in their gray Chevrolet Tahoe. The deputies stayed at the house about five minutes.

As the deputies were leaving the house, they saw a gray Chevrolet Tahoe travelling north at a high rate of speed about 100 feet to the east of their location. The driver matched Eric's description. The deputies got into their cars and pursued the Tahoe. The pursuit ended back at the Stenhouse residence.

At some point, Patricia Boyce ran into the house and told Keiona that Eric and the police were outside. Kingsby, Featherstone, Patricia Boyce, Kianna Boyce, and the children all went outside onto the porch.

Meanwhile, according to the deputies' version of the events, Deputy Williams attempted to prevent Eric from getting out of the Tahoe by pulling up next to the driver's side door. When Eric managed to get out of the vehicle, Deputy Williams drew his gun and ordered Eric to stop and to put his hands on his head. Eric responded, "Fuck you, bitch. This is private property." Facing the deputies, Eric walked backward toward the house, cursing at the deputies and ignoring their commands to stop. When Eric was halfway to the house, a group of people "pil[ed] out of the house." The deputies saw three adults along with children and teenagers. The adults began telling the deputies, "This is private property. Leave him alone." "Get off the property."

Kingsby and Featherstone approached Eric. Deputy Dodson ordered them to stop. Deputy Williams grabbed Eric's arm while Deputy Dodson used pepper spray in an attempt to restrain Eric. At the same time, according to Deputy Williams, Kingsby

3

grabbed Eric from behind in a "bear hug" and began pulling him away from the deputies. Kingsby was yelling, "Leave him alone. This is private property." When Deputy Dodson grabbed Eric's other arm, Featherstone grabbed Eric's arm and shoulder and attempted to pull him away from the deputies. She too was yelling, "Leave him alone. This is private property. Get out of here."

During the "tug of war" over Eric, he, the deputies, Kingsby, and Featherstone all fell to the ground. One of the people outside the house, Patricia Boyce, began recording the incident on a cell phone.[3] She yelled at the officers that they were racists, they were on private property, and they were "going to get a lawsuit." Deputies Williams and Dodson kept telling everyone to "get back" or they would go to jail. Featherstone called the deputies racists and said she would sue them. Eventually, Kingsby and Featherstone got up and backed away about three feet, although they continued yelling at the deputies. Deputy Dodson handcuffed Eric.

Deputy Williams testified that he did not see Eric pulling or grabbing Kingsby, although it appeared that Kingsby was trying to get out from underneath him when they were on the ground. Deputy Williams testified that Kingsby and Featherstone interfered with their attempt to place Eric under arrest and made the incident more serious than it needed to be.

The family's version of the events of that afternoon was different.

Kingsby testified that at some point, while the family was in the house after Eric had driven away, someone heard sirens, and Featherstone said, "That must be Eric." Everyone ran to the front door, but Kingsby was in the back and at first could not see what was happening. Kingsby said that she passed through the group of people standing on the porch, walked outside, and stood in the driveway, in front of the garage. She saw Eric coming up the driveway, followed by the two deputies. Eric made eye contact with her and then ran up to her and grabbed her in a bear hug, pinning her arms to her sides.

---

[3] The jury viewed the cell phone recording.

Kingsby asked Eric to let her go, but he kept saying, "Mom, are you serious?" One of the deputies ordered Kingsby to "get the fuck away" from Eric, but she responded, "I can't." The deputy then sprayed her and Eric with pepper spray, and she was knocked to the ground. She called for Featherstone to come help her. One of the deputies pried Eric's hands off of Kingsby, and Featherstone helped her up. Kingsby stated, "He wouldn't hurt me." Kingsby denied grabbing Eric or trying to help him escape. She explained that Eric had beaten her daughter and she did not want him to escape.

Keiona testified that when she heard the sirens, she went out onto the porch to see what was going on along with everyone else who was in the house.[4] Keiona heard one of the deputies tell Eric to freeze and saw Eric continue walking toward the grass. Eric then ran and grabbed Kingsby, who was standing in the driveway, in a bear hug while Featherstone tried to separate them. One of the deputies sprayed them with pepper spray. Kingsby complained that the pepper spray got in her mouth, and Featherstone told the deputies, "Wait, you guys sprayed my mom with pepper spray." One of the deputies tried to pull Eric away, but he resisted. Eric, Kingsby, and the deputies fell on the grass, where Eric pinned Kingsby to the ground. Kingsby was yelling, "He has me" and that she had been pepper sprayed. Other people were yelling, "Don't shoot him. Stop. This is private property." Patricia Boyce was yelling, "This is racist," and "lawsuit." When the deputies ordered everyone to get back, Featherstone complied. Kingsby complied once she was able to extricate herself from the pile.

Featherstone testified that she went outside to the porch because she "was being nosey." Featherstone saw Eric at the far end of the driveway and Kingsby at the other end of the driveway near the garage. Featherstone never thought about going back into the house, even though she saw a gun. She saw Eric walking backwards, yelling that it was private property, Deputy Williams following with a gun, and Deputy Dobson with a gun and pepper spray. Featherstone then saw Eric run up the driveway and grab

---

**4** Keiona admitted prior convictions for burglary, taking a vehicle, identity theft, grand theft, and filing a false police report.

Kingsby. Deputy Dobson shot pepper spray on both Eric and Kingsby. The deputies tried to pull Eric away from Kingsby, who was resisting, and then the four of them fell over onto the grass. Featherstone then stepped off the porch and onto the grass and went to help Kingsby by pulling on her arm. Deputy Williams told Featherstone to step back, but she did not comply. Featherstone said she was trying to help her mother get away from Eric, not help Eric get away from the deputies.

Dashell Chastang lived next door to the Stenhouses and was acquainted with them. She did not know Kingsby or Featherstone. She was in her house when her children told her the police were outside. She went outside and saw Eric's Chevrolet Tahoe and the cars of the two deputies pull into the Stenhouse driveway. According to Chastang, Eric got out of the Tahoe and walked up the driveway. He grabbed Kingsby's upper body and said, "Mom, is that how you feel? I love you. I was just at your house yesterday." One of the deputies said, "Let go." Kingsby responded, "I can't. He has me." One of the deputies pepper sprayed Eric and Kingsby. The next thing Chastang knew, they were all "tussling" on the grass. Featherstone attempted to help Kingsby, who kept saying, "I can't let go." One of the deputies then ordered Chastang inside, and she complied.

Both deputies were injured in the incident. On July 19, 2011 Eric was convicted of felony spousal abuse in violation of Penal Code section 273.5.

## DISCUSSION

Defendants were convicted of obstructing or resisting executive officers in the performance of their duties in violation of Penal Code section 69 (section 69). This section punishes "[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty . . . ." A defendant may violate section 69 in two separate ways. "'The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer

6

in the performance of his or her duty.' [Citations.] 'The two ways of violating section 69 have been called "attempting to deter" and "actually resisting an officer."' [Citation.]" (*People v. Rasmussen* (2010) 189 Cal.App.4th 1411, 1417-1418; *People v. Carrasco* (2008) 163 Cal.App.4th 978, 984.)

Defendants argue that the trial court erred by failing to instruct the jury sua sponte on the lesser included offense of resisting, delaying, or obstructing a public officer in the discharge of his duties in violation of Penal Code section 148, subdivision (a)(1) (section 148(a)(1)). This section applies to "[e]very person who willfully resists, delays, or obstructs any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . ." (§ 148(a)(1).)

The Supreme Court recently addressed the issue whether section 148(a)(1) is a lesser included offense of section 69. In *People v. Smith* (2013) 57 Cal.4th 232, the People charged the defendant with violating section 69, and the defendant requested an instruction on section 148(a)(1) as a lesser included offense. The prosecution objected, and the trial court denied the defendant's request. (*Id.* at p. 236.)

The Supreme Court noted that the trial court must give "instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' [Citation.]" (*People v. Smith*, *supra*, 57 Cal.4th at p. 239.) The Supreme Court stated that this "is because 'California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense "necessarily included" in the charged offense, if there is substantial evidence that only the lesser crime was committed. This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence.' [Citation.] '[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other. Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is

neither "harsher [n]or more lenient than the evidence merits." [Citation.]' [Citation.] Thus, 'a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' [Citation.]" (*Id.* at pp. 239-240.)

"For purposes of determining a trial court's instructional duties, we have said that 'a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]' [Citation.]" (*People v. Smith*, *supra*, 57 Cal.4th at p. 240.) The court held that under the statutory elements test, section 148(a)(1) is not a lesser included offense of section 69. (*Ibid*.) "A person who violates section 69 in the second way—by 'knowingly resist[ing], by the use of force or violence, such officer, in the performance of his duty'—also necessarily violates section 148(a)(1) by 'willfully resist[ing] . . . any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment.' [Citation.] But it is possible to violate section 69 in the first way—by attempting, through threat or violence, to deter or prevent an executive officer from performing a duty—without also violating section 148(a)(1). A person who threatens an executive officer in an attempt to deter the officer from performing a duty 'at some time *in the future*' [citation] does not necessarily willfully resist that officer in the discharge or attempt to discharge of his or her duty under section 148(a)(1). Accordingly, section 148(a)(1) is not a lesser included offense of section 69 based on the statutory elements of each offense. [Citations.]" (*Smith*, *supra*, at pp. 241-242.)

Turning to the accusatory pleading test, the Supreme Court noted that "[i]f the accusatory pleading in the present case had charged only the first way of violating section 69—i.e., that defendant attempted, through threat or violence, to deter or prevent an executive officer from performing a duty—section 148(a)(1) would not have been a necessarily included offense. But the amended information charged defendant with both

ways of violating section 69.  In addition to the first way of violating the statute, the accusatory pleading also alleged that defendant violated the statute in the second way by 'knowingly resist[ing], by the use of force or violence, such officer, in the performance of his duty.'  As explained above, section 148(a)(1) is necessarily included within this second way of violating section 69." (*People v. Smith*, *supra*, 57 Cal.4th at p. 242.)  Thus, "section148(a)(1) was a necessarily included lesser offense of section 69 as alleged in the . . . information." (*Id*. at p. 243.)

In this context the Supreme Court affirmed the rule "requiring sua sponte instruction on a lesser offense that is necessarily included in one way of violating a charged statute when the prosecution elects to charge the defendant with multiple ways of violating the statute . . . ." (*People v. Smith*, *supra*, 57 Cal.4th at p. 244.)  In applying this rule, "[t]he trial court need only examine the accusatory pleading.  When the prosecution chooses to allege multiple ways of committing a greater offense in the accusatory pleading, the defendant may be convicted of the greater offense on any theory alleged [citation], including a theory that necessarily subsumes a lesser offense.  The prosecution may, of course, choose to file an accusatory pleading that does not allege the commission of a greater offense in a way that necessarily subsumes a lesser offense.  But so long as the prosecution has chosen to allege a way of committing the greater offense that necessarily subsumes a lesser offense, and so long as there is substantial evidence that the defendant committed the lesser offense without also committing the greater, the trial court must instruct on the lesser included offense.  This allows the jury to consider the full range of possible verdicts supported by the evidence and thereby calibrate a defendant's culpability to the facts proven beyond a reasonable doubt.  As our precedent has emphasized, such an approach does not, in purpose or effect, work to the advantage of either the prosecution or the defense.  Instead, it serves to protect the jury's truth-ascertainment function." (*Id*. at p. 244.)

Here, the prosecution alleged both ways of violating section 69.  The People alleged that Kingsby and Featherstone "did unlawfully attempt by means of threats and violence to deter and prevent [each deputy], who was then and there an executive officer,

9

from performing a duty imposed upon such officer by law, and did knowingly resist by the use of force and violence said executive officer in the performance of his/her duty." Therefore, the trial court had a duty to instruct as to section 148(a)(1) if there was substantial evidence that defendants committed only the lesser offense. (See *People v. Smith*, *supra*, 57 Cal.4th at pp. 239-240, 245.)

While the prosecution's evidence supported a finding that defendants used force or violence to resist the deputies in the performance of their duties (*People v. Rasmussen*, *supra*, 189 Cal.App.4th at pp. 1417-1418), the defense presented evidence from which a jury could reasonably infer that Kingsby and Featherstone, without necessarily using force or violence, willfully injected themselves into a situation in which the deputies were trying to do their duty and delayed or obstructed the deputies' efforts to arrest Eric. Kingsby and Featherstone came outside as Eric was walking toward the house. Kingsby testified that she went on to the driveway even though she saw the deputies with their guns drawn chasing Eric. Both Kingsby and Featherstone repeatedly failed to comply with directives from the deputies to move away. Eric was able to grab Kingsby, and the two of them ended up on the ground with the deputies. Featherstone attempted to pull Kingsby away from Eric, adding another person to the struggle. The fact that the deputies sprayed Kingsby with pepper spray as they were attempting to subdue Eric is further evidence that Kingsby had placed herself in a position where she was obstructing the deputies. Thus, there was substantial evidence that the decisions by Kingsby and Featherstone to become involved in the confrontation between the deputies and Eric made it more difficult for the deputies to place Eric under arrest.

Moreover, the jury could have believed the testimony of the officers that Kingsby and Featherstone came out of the house and down from the porch and interfered with the officers' efforts to arrest Eric, but believed the testimony of Kingsby and Featherstone that Eric grabbed Kingsby rather than the deputies' testimony that Kingsby grabbed Eric. As in *People v. Lacefield* (2007) 157 Cal.App.4th 249, disapproved on another ground in *People v. Smith*, *supra*, 57 Cal.4th at p. 242, the "jurors were entitled to accept or reject all of the testimony, or a portion of the testimony, of any of the . . . witnesses. [Citation.]

10

They might have believed part of what the officers said and part of what the defense witnesses said. They therefore might have found that [the defendant] acted unlawfully, by arguing with [the officer] and refusing to disburse, but he did not use force unlawfully . . . ." (*Lacefield*, *supra*, at p. 261.) Even if neither Kingsby nor Featherstone used force in pulling Eric away from the deputies, they still could have violated section 148(a)(1). Although "'[s]ection 148 is most often applied to the physical acts of a defendant,'" the statute "'"is not limited to nonverbal conduct involving flight or forcible interference with an officer's activities. No decision has interpreted the statute to apply only to physical acts, and the statutory language does not suggest such a limitation." [Citation.]' [Citation.]" (*People v. Christopher* (2006) 137 Cal.App.4th 418, 431; see *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329-1330; *People v Quiroga* (1993) 16 Cal.App.4th 961, 968.)

Thus, there was substantial evidence on which a jury could find that Kingsby and Featherstone violated only section 148(a)(1), by delaying or obstructing the officers, without violating section 69 by resisting the officers by force or violence. This case is not like *Carrasco*, where "if [the defendant] resisted the officers at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section 148[(a)(1)] but not section 69." (*People v. Carrasco*, *supra*, 163 Cal.App.4th at p. 985.) Instead, this case is like *Lacefield*, where the court found that "there was an evidentiary basis for instructing on section 148(a)(1) . . . because there were different versions of how the incident occurred, such that the jury might have found that [the defendant] violated section 148(a)(1) and not section 69, if it had been given section 148(a)(1) as an option." (*People v. Lacefield*, *supra*, 157 Cal.App.4th at p. 260.) Therefore, the trial court erred in failing to instruct the jury on section 148(a)(1) as a lesser included offense of section 69. (*People v. Smith*, *supra*, 57 Cal.4th at pp. 239-240, 245.)

The erroneous failure to instruct on a lesser included crime is prejudicial if it is reasonably probable that defendants would have obtained a more favorable result absent the error. (*People v. Moye* (2009) 47 Cal.4th 537, 555-556; *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1146; *People v. Ramirez* (2010) 189 Cal.App.4th 1483, 1487.) In

this context, a reasonable probability "'"''"does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.'"''"' (*Millbrook*, *supra*, at p. 1146, quoting *People v. Wilkins* (2013) 56 Cal.4th 333, 351.) Here, the evidence revealed a rapidly unfolding situation with a number of people becoming involved, either in the physical struggle with Eric or yelling at one another. The deputies were outnumbered and trying to take Eric into custody while Kingsby and Featherstone were struggling with them and various other family members were yelling at them. The witnesses for the prosecution and the defense had different recollections of what occurred. The evidence of guilt was not overwhelming or uncontested, and each side presented equally plausible versions of what happened, leaving the jury ultimately to decide a credibility contest.

Given the state of the evidence in this case, we cannot say that the failure to instruct on the lesser included offense was harmless. "The absence of an instruction on section 148(a)(1) forced 'an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other.' . . . The pleadings and evidence here suggested a middle ground, a conviction for section 148(a)(1), but the jury was not given that option." (*People v. Lacefield, supra,* 157 Cal.App.4th at p. 262.) The evidence in this case "was not so overwhelming as to show there is no reasonable probability that [defendants] would have obtained a more favorable result if the jury had been instructed" on section 148(a)(1). (*People v. Ramirez*, *supra*, 189 Cal.App.4th at p. 1488; see *People v. Villanueva* (2008) 169 Cal.App.4th 41, 53 [where conflicting testimony given by two witnesses is not "inherently incredible" and is "evenly balanced," failure to instruct on lesser included offense is prejudicial].) Therefore, the convictions must be reversed.[5]

---

[5] Because we conclude that the judgments must be reversed because of the trial court's failure to instruct on a lesser included offense, we do not address Kingsby and Featherstone's argument that the prosecutor engaged in misconduct during closing argument. Nor do we address Kingsby's arguments that the trial court's denial of her request to join in Featherstone's *Pitchess* motion deprived her of the right to present a

**DISPOSITION**

The judgments are reversed.


SEGAL, J.*


We concur:


PERLUSS, P. J.


ZELON, J.

---

defense and that her counsel's failure to file a *Pitchess* motion deprived her of the effective assistance of counsel. Kingsby will have an opportunity to file a *Pitchess* motion on remand if she chooses to do so, although the fact that Featherstone did not introduce into evidence any of the information she discovered as a result of her *Pitchess* motion suggests that such a motion is not likely to aid Kingsby's defense. Kingsby and Featherstone also contend that the trial court erred by using an obsolete version of CALJIC No. 7.50 that did not instruct the jury on the specific intent required for the first type of violation of section 69, attempting to deter an officer. On remand, the trial court will have the opportunity to use the revised version of this instruction.

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.